ROBERT L. COOK *vs.* UNION RAILWAY COMPANY.

Suffolk. March 22. — July 18, 1878. AMES & MORTON, JJ., absent.

In an action for personal injuries occasioned to the plaintiff through the alleged negligence of the defendant, a horse-railroad corporation, the evidence tended to show that, at the time of the accident, the plaintiff was driving along a street, in the daytime, with the off wheels of his wagon in the outer rail of the defendant's track, at the rate of from four to six miles an hour; that the plaintiff was driving with a taut rein, his feet resting on a platform, built for the purpose, in front of the wagon; that, at the place where the accident occurred, a steam railroad crossed the street at grade with a continuous rail which crossed and cut the track of the defendant, leaving a gap of four or five inches between the thick part of the end of the horse-car rail and the steam-car rail; that the thick part of the defendant's rail, which projected above the level of the top of the rail of the steam railroad, had been cut away so as to allow the wheels of the steam cars to pass without obstruction; that the end of the thick part, where it had been cut away, was broken under, and sharper than a right angle; that as the plaintiff was crossing the track of the steam railroad, his off wheels still running in the outer rail of the defendant's track, he pulled up his horse slightly, and attempted to turn off to the right from the defendant's track; that as the horse, after having passed beyond the further rail of the steam-railroad track, stepped with its off fore foot on to the outer rail of the defendant's track, it sprung down about a quarter of an inch, and the plaintiff's off wheel was caught by the end of the same rail; that the wagon was suddenly stopped, and the plaintiff thrown out and injured; and that, immediately after the accident, and, before the wagon had been moved away from the defendant's rail, the rail was found to be raised up six inches or a foot, and resting against the wheel. The plaintiff testified, on cross-examination, that he slackened the speed of his horse about one third when he arrived within ten feet of the railroad crossing; that the horse was trotting all the time; that he had crossed there a dozen times before; that he did not know there was any danger. *Held*, that, on the above evidence, the questions whether the plaintiff was in the exercise of due care, and whether the defendant was negligent, were for the jury.

TORT for personal injuries occasioned to the plaintiff by reason of the alleged negligence of the defendant. Answer, a general denial. At the trial in this court, before *Lord*, J., there was evidence tending to show the following facts:

On April 21, 1876, the plaintiff was driving, in the daytime, in an ordinary express wagon, on Cambridge Street, East Cambridge, towards Old Cambridge. He was sitting by the right hand of the wagon seat, which was securely fastened to the body of the wagon, and was driving with a taut rein, with his feet resting on a platform, in front of the wagon, built for the purpose, and protected by an iron rail. The horse was trotting at the rate of from four to six miles an hour, with the off wheels of the wagon in the right hand rail of the defendant's horse railroad.

At the place of the injury, a branch railroad, belonging to the Boston and Albany Railroad Company, crosses Cambridge Street with a double track at grade, with a continuous rail, which crosses and cuts the double track of the defendant, with a gap of four or five inches between the thick part of the end of the horse-car rail and the steam-car rail, for the passage of the steam-car wheels. As the plaintiff was crossing the track of the Boston and Albany Railroad Company, his off wheels still running in the right hand rail of the defendant's double track, he pulled up his horse slightly, and attempted to turn off to the right from the defendant's tracks, and into the space between them and the sidewalk. As the horse turned to the right, after having passed beyond the further rail of the Boston and Albany Railroad track, it stepped with its off fore foot on to the outer right hand rail of the defendant's tracks, which lies next adjacent to the further rail of the steam-railroad tracks, the defendant's rail clattered and moved, or sprung down about a quarter of an inch, and the plaintiff's off fore wheel was caught by the end of the same rail. The wagon was suddenly stopped, the horse thrown suddenly around to the right, and out of the wagon shafts, and the plaintiff was thrown upward slightly by the shock, and forward from ten to twelve feet, striking on the defendant's outer rail and the heavy paving stones adjacent to it. At the moment of the shock, the plaintiff was holding both reins tightly in his hands, and he so held them till he struck the ground. Immediately after the injury, and before the wagon had been moved away from the defendant's rail, with which its off fore wheel had come in contact, the rail was found to be raised up six inches or a foot, and resting against the wheel.

The defendant's rail, which was of the ordinary pattern in common use in this vicinity, was about four and a half inches wide, about an inch or an inch and a quarter thick on the out side, and considerably less on the inside, forming a flange or pro-jection about three-quarters of an inch high, which served to prevent the defendant's horse-car wheels from leaving the rail. Ordinarily the thin part of the rail was almost on a level with the top of the adjacent rail of the steam railroad, allowing the defendant's horse-cars to pass from its rails over the rail of the steam railroad with as little jolting as possible. The thick part of the defendant's rail projected above the level of the top of the adjacent rail of the steam railroad. About four or five inches of the thick part of the defendant's rail, adjacent to the steam rail-road, had been cut away to allow the wheels of the steam cars to pass without obstruction. The end of the thin part of the defendant's rail, left after cutting away the thick part, was about a half or three quarters of an inch from the adjacent rail of the steam railroad, and was thin and sharp. The end of the thick part, where it had been cut away, was broken under, and sharper than a right angle; and there was a section of a spike hole on the outer edge of the thin part of the rail, between the end of the thick part and the end of the thin part; and the spike which was driven there did not hold, the head being worn off and al-lowing some play. This spike was not pulled out when the rail was pulled up by the wagon wheel, but the three or four spikes in the rail next from this one were pulled out, and had to be re-moved to allow the rail to fall back in its place. Immediately after the accident, the end of the rail which had caught the wagon wheel was observed to be raised up four inches, and the bend in the rail extended back five or six feet or more. The rail had been observed by the flagman stationed there to be loose for some days before the accident. When horse-cars passed over it the rail would move up and down a little, but not so much when a wagon went over it. The rail was about twenty-five feet long; and, after the accident, on the same day, the rail was fastened down again.

The plaintiff testified, on cross-examination, that he slackened the speed of his horse about a third when he arrived within about ten feet of the railroad crossing; that the horse was trot-

ting all the time; that he had crossed there a dozen times before; that he did not know there was any danger; and was not thinking about the danger of the crossing at the time, and did not think of the crossing, at the time, as dangerous at the rate he was driving; that he slackened up a little when he came to the crossing, because a train of cars might be coming, and had never turned off to the right of the defendant's track at that place before; that he remembered perfectly his horse putting his off fore foot upon the rail; that he heard a clattering noise, and thought that his horse had torn a shoe off; that he looked to see, and saw the rail move about a quarter of an inch when the horse stepped on it, and that, at that moment, he was suddenly thrown out of the wagon; that he held the reins in his hands until he struck the ground; and that the distance from the end of the rail to the point where his horse stepped on it was seven or eight feet.

The flagman employed at the crossing testified that very many vehicles passed daily over this crossing; that he never knew of an accident before; that the horse-car rail "buckled" about one fourth of an inch when a car came on to it, but not so much for a wagon; that he had often noticed the steam-rail do the same; that he had said nothing about it and did not think it dangerous; that a horse stepping on the middle of the rail could not lift the end up; that, since the accident, the horse-car rails had been taken up, new planks put under them, and the rails spiked down again; that if the plaintiff had walked his horse, there would have been no trouble; and that the plaintiff's horse was trotting just as fast when he turned off as at any time, and it looked as if that threw him out him out as much as anything.

This was all the evidence for the plaintiff, except upon the question of damages; and the judge reported the case for the consideration of the full court. If the jury would be authorized to return a verdict for the plaintiff, the case was to stand for trial; otherwise, judgment was to be entered for the defendant.

*S. H. Dudley*, for the plaintiff.

*G. A. Somerby & W. Emery*, for the defendant.

SOULE, J. In driving on the highway, the plaintiff was in the exercise of an undisputed right. The defendant, which occupied a part of the highway with its tracks, was bound so to construct

and maintain the tracks that they should not be an obstruction to public travel on the highway. In the absence of knowledge, or the means of knowledge, to the contrary, the plaintiff had a right to assume that the tracks were so constructed and maintained. There was evidence as to the manner and rate of speed at which he was driving, as to the slackening of speed when he approached the crossing of the Boston and Albany Railroad track and began to turn out from the track of the defendant, which might properly be submitted to the jury, on the question whether he was in the exercise of due care. This is not the case of one who has voluntarily and improperly put himself in a dangerous place, and who therefore cannot recover for injuries received through the negligence of the defendant. It belongs to another class of cases, where the plaintiff, having sustained injury while doing what he had a right to do, must, in order to recover of a negligent defendant, prove affirmatively that he was in the exercise of such care as was appropriate to the place and occasion. If, in such case, there is any evidence on which it is competent for a jury to find that he in fact used reasonable care, the case must be submitted to them, however indicative of carelessness the facts may seem to the court. The court will not decide the question on the preponderance of evidence. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137.

So, too, if there was any evidence from which a jury would be warranted in finding that negligence of the defendant, in the construction or maintenance of its track, caused the injury, the question should be submitted to them, although there might seem to be a preponderance of testimony to the contrary. There was evidence which tended to show that when the plaintiff attempted to turn out of the track of the defendant's railroad, the wheel of his wagon was caught under the end of the thick part of the defendant's rail, which had been cut away so as to leave about five inches space between it and the rail of the Boston and Albany Railroad track, and had been so cut away as to be broken under, and sharper than a right angle. This construction was such that a wagon wheel moving toward it and diagonally across the street, was exposed to the danger of being caught under the projecting end of the rail, whereas, if the rail had been so cut off that the slope was forward and downward, there would

have been no sharp projection or hook in which a wheel could be caught. Whether, on the whole evidence, the accident was caused by the catching of the wheel in this projection ; and if it was, whether the construction of the track of the defendant s road in the manner indicated, at the point where the accident occurred, in view of the amount of travel on the highway, and in view of the crossing of the Boston and Albany Railroad track, was or was not so reasonably safe and convenient as to be no obstruction to travel on the highway, and therefore to show that the defendant was or was not negligent, were questions proper to be submitted to the jury. Whatever may be our views as to the proper answer to these questions, we cannot say that there was no evidence to warrant a finding for the plaintiff.

*Case to stand for trial.*

