#### OF THE

## STATE OF NEVADA.

## OCTOBER TERM, 1879.

14  351
14  387
16  279
16 · 296
20  307
21* 680

[No. 964.]

## A. J. BUNTING, Appellant, v. THE CENTRAL PACIFIC RAILROAD CO., Respondent, and MICHAEL HARRISON, Appellant, v. THE CENTRAL PACIFIC RAILROAD CO., Respondent.

ACTION AGAINST RAILROAD COMPANY—CONTRIBUTORY NEGLIGENCE—DAMAGES.—Where it affirmatively appears that plaintiff was careless, and that his negligence proximately contributed in producing the injury complained of, he is not entitled to recover any damages.

IDEM—NEGLIGENCE — QUESTION OF LAW.—If a party, knowingly about to cross a railroad track at a regular crossing on a public street of a town, can have an unobstructed view of the railroad, so as to know of the approach of a train a sufficient time to clearly avoid any injury from it, and he fails to use his ordinary faculties, and an injury occurs, he can not, as a matter of law, recover.

IDEM—NEGLIGENCE—QUESTION OF FACT.—If the view of the railroad is so obstructed by the act of the railroad company as to render it difficult to learn of the approach of a train, or there are other circumstances calculated to deceive a party approaching the track, such party has the right to presume that the usual and proper signals will be given by the railroad company; and if not given, then the question whether it was negligence on his part, is a question of fact for the jury to determine.

IDEM—SUDDEN DANGER.—Where a party suddenly finds himself in great peril, the law does not demand the exercise of the soundest discretion, without regard to the surrounding circumstances.

WHEN QUESTION OF NEGLIGENCE SHOULD BE SUBMITTED TO A JURY.—
Whenever the question whether plaintiff was guilty of contributory neg-
ligence, whether he exercised ordinary and reasonable care, is dependent
upon a state of facts, in regard to which reasonable men might honestly
differ, the question should be submitted to the jury.

IDEM—NONSUIT.—Upon a review of the testimony: *Held*, that the court
erred in granting a nonsuit.

APPEAL from the District Court of the Second Judicial
District, Washoe County.

The facts are stated in the opinion.

*Thomas E. Haydon*, for Appellants.

I. *Solen* v. *V. and T. R. R. Co.*, 13 Nev. 106, is con-
clusive in favor of appellants.

II. Where a railway is carried across a public highway so
that those approaching on the highway can neither distinctly
see nor hear approaching trains, the company is required to
use a greater degree of care than in other places. (*Richard-
son* v. *N. Y. Cent. R. R. Co.*, 45 N. Y. 846; 35 Id. 75.)

III. If no signal be given at the crossing of a street, a
person crossing has the right to presume the track clear.
*Philadelphia and Trenton R. R. Co.* v. *Hagan*, 47 Pa. St.
244; *Pittsburg, Fort Wayne and Chicago R. R. Co.* v. *Dunn*,
56 Pa. St. 280; 36 N. Y. 132; 38 Id. 445.)

The bell should be rung so long as there is danger of en-
countering passers-by. (*Whiton* v. *Chicago and N. West.
R. R. Co.* 2 Bissell, U. S. C. C. 282.)

IV. If the view of the track is obstructed it is a question
of fact for the jury to determine whether the injured party
was guilty of any negligence in going upon it. (*Artz* v.
*Chicago, Rock Island and Pacific R. R. Co.* 34 Iowa, 153.)

V. A traveler is not bound to stop his team or leave it to
go on to the track to see if a train is coming; he has the
right to presume, at a street crossing, that signals will
be given by bell or whistle, sufficient to overcome the noise
of vehicles ordinarily passing over such crossings. (*Davis*
v. *N. Y. Cent. and Hud. R. R.* 47 N. Y. 400; *Duffy* v.
*Chicago and N. W. R. R.* 32 Wis. 269; *Egan* v. *Fitchburg*

R. R. Co. 101 Mass. 315; 34 N. Y. 622; 31 How. Pr. 181; *Kennayde* v. *Pac. R. R. Co.* 45 Mo. 255; *Taber* v. *Missouri Val. R. R. Co.* 46 Id. 353.)

VI. A railroad company can not impute negligence to a person if his want of vigilance is occasioned by an omission of duty on the part of defendant. (*Penn. R. R. Co.* v. *Ogier*, 35 Pa. St. 60, 1860.)

The company must run its trains with reference to the safety of persons rightfully on its track. (*Kan. Pac. R. R. Co.* v. *Pointer*, 9 Kan. 620.)

It is neglect in a railway company to permit its cars to stand upon or obstruct the view of public streets. (*McGuire* v. *Hudson River R. R. Co.,* 2 Daly, N. Y. 76.)

VII. It is only where a question of fact is entirely free from doubt that the court has the right to apply the law without the action of the jury. (*Bernhardt* v. *Rens. and Saratoga R. R. Co.* 32 Barb. N. Y. 165; 18 How. Pr. N. Y. 427; 19 Id. 199; 23 Id. 166; *Central R. R. Co.* v. *Moore*, 4 Zabris. N. J. 824.)

Due care of a person may be inferred from his ordinary habits. (*Johnson* v. *Hudson River R. R. Co.*, 20 N. Y. 65.)

The speed of a railroad in a town or city must be regulated with due regard to the safety of the inhabitants. (*Meyer* v. *Midland Pacific R. R. Co.* 2 Nebraska, 319.)

VIII. The act of the railroad company after an accident, in removing obstructions and lowering rate of speed, etc., is an admission of negligence on their part at time of the accident. (*West Chester and Phil. R. R. Co.* v. *McElwee*, 67 Pa. St. 311; 2 Wharton on Evidence, 1081.)

IX. Where a person is startled or alarmed, the law does not require his efforts to escape to be regulated by the soundest discretion. (*Robinson* v. *W. P. R. R. Co.* 48 Cal. 421.)

*Harvey S. Brown and W. H. L. Barnes*, for Respondent.

I. In an action to recover damages for an injury to plaintiff caused by an accident at a street crossing, the burden of proof is on the plaintiff, not only to show negligence and misconduct on the part of the defendant, but ordinary care

and diligence on his own part. (*Lane* v. *Crombie*, 12 Pick. 176; *Gay* v. *Winter*, 34 Cal. 164; *Gribble* v. *Sioux City*, 38 Iowa, 390; *Lewis* v. *Baltimore & O. R. R.*, 38 Md. 588; *Johnson* v. *Tillson*, 36 Iowa, 90; *Muldowney* v. *Ill. R. R. Co.*, Id. 465; *Bangor & Piscataquis R. R. Co.* v. *Jones*, 15 Pac. L. Rep. 29; *North Penn. R. R. Co.* v. *Heileman*, 49 Pa. St. 60; *Hanover R. R. Co.* v. *Coyle*, 55 Id. 396; *Central R. R. Co. of N. J.* v. *Feller*, 84 Id. 228; *Gerety* v. *Phil. Wil. & Balt. R. R. Co.*, 81 Id. 274; *Gerety* v. *Phil. Wil. & Balt. R. R. Co.*, 16 Am. Ry. 164; *Grows* v. *Maine C. R. Co.*, 16 Id. 326; *Allyn* v. *Boston & A. R. R. Co.*, 105 Mass. 77; *Todd* v. *Old Colony & F. R. R. R. Co.*, 7 Allen, 207; *Nicholls* v. *Great West. R. R. Co.*, 27 Upper Can. Q. B. 382; *Morrison* v. *Erie R. Co.*, 56 N. Y. 302.)

II. The omission to put up signboards or ring bells at public crossings even when required by statute does not render the company absolutely liable for injuries to persons or property. Evidence of such omissions merely establishes the negligence of the company, and if it appears that the plaintiff's negligence contributed to the injury, he can not recover and should be nonsuited, or the court should instruct the jury to find for defendant. (*Dodge* v. *Burlington C. R. & M. R. R.*, 34 Iowa, 277; *Havens* v. *Erie R. Co.*, 41 N. Y. 296; *Baxter* v. *Troy and Boston R. R.*, Id. 502; *McGrath* v. *N. Y. Centr. & H. R. R.*, 59 Id. 470; *Cin. C. C. & I. R. R.* v. *Elliott*, 28 Ohio, 340; *Harlan* v. *St. L., Kansas C. & N. R. R.*, 64 Mo. 480; *Fletcher* v. *Atlantic & Pac. R. R.*, Id. 484; *Chicago, R. I. & Pac. R. R.* v. *Houston*, 10 Chicago L. N. 139; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 7 Hun. 560; *Gorton* v. *Erie R. Co.*, 45 N. Y. 660; *Butterfield* v. *Western R. R. Co.*, 10 Allen, 532.)

III. Where a person who is about to cross a railroad track at a public crossing could either see or hear an approaching train, but fails to look or listen, he is guilty of negligence, and is not entitled to recover for injuries caused by a collision happening immediately thereafter. (*Haines* v. *Ill. Cen. R. R.*, 41 Iowa, 227; *St. L. & T. H. R. R.* v. *Manly*, 58 Ill. 300; *Solen* v. *V. & T. R. R. Co.*, 13 Nevada, 106; *Brown* v. *Mill. & St. Paul R. R.*, 22 Minn. 165; *Pa. R.*

*R.* v. *Beale,* 73 Pa. St. 504; *Flemming* v. *W. P. R. R.,* 49 Cal. 253.)

IV. The court did not err in refusing to allow the witnesses to give their opinions as to the speed of defendant's train.

Where opinions of witnesses are admissible and competent at all, they must be in some way peculiarly qualified to speak on the subject, and have knowledge not possessed by the mass of persons of ordinary experience and intelligence. (*Harris* v. *Panama R. R. Co.,* 3 Bos. 7; *Reynolds* v. *Jordan,* 6 Cal. 108; *Enright* v. *S. F. & S. J. R. R. Co.,* 33 Cal. 236; *Hastings* v. *The Uncle Sam,* 10 Cal. 341; *Harpending* v. *Shoemaker,* 37 Barb. 270; *Page* v. *Parker,* 40 N. H. 59.)

*I. B. Marshall,* also for Respondent.

By the Court, HAWLEY, J.:

The above entitled causes were, by consent of the respective counsel, tried together. The district court granted a nonsuit.

The statement on appeal shows that, on the morning of the twelfth of June, 1877, at a regular crossing on a public street in the town of Reno, a collision occurred between the locomotive of the defendant, attached to its regular passenger train of cars, and a two-horse team and wagon then being driven, or attempted to be driven, over the railroad tracks. The horses were killed. Each of the plaintiffs was injured and their property damaged.

There was sufficient testimony tending to prove that defendant was negligent in not ringing its bell or blowing its whistle, and was traveling at an unusually fast rate of speed, to have authorized the court to submit the question of defendant's negligence to the jury.

If the defendant was negligent in these respects its negligence would not, under the principles decided by this court in *Solen* v. *Virginia and Truckee Railroad Company,* 13 Nev. 106, relieve the plaintiffs from their duty of exercising ordinary care and prudence. If it, therefore, affirmatively ap-

pears, as claimed by respondents' counsel, that the plaintiffs were careless, and that their negligence proximately contributed in producing the collision, they are not entitled to recover any damages; but must bear the consequences of their own folly.

Were the plaintiffs negligent? Did they use ordinary care and prudence? Was the collision caused by the improper conduct and negligence of the defendant; or, did the plaintiffs so far contribute to the injuries received by their own negligence, that but for such negligence and want of due care on their part the accident would not have happened? Was the court right in deciding, as a matter of law, that plaintiffs did not exercise ordinary care and prudence; or, were the plaintiffs entitled to have that question submitted to the jury as a question of fact?

The authorities which bear upon these questions are not entirely uniform; yet an examination of them clearly shows that courts have usually closely scrutinized the peculiar facts, surroundings and conditions, of each particular case, and the apparent conflict of the decisions can, in many cases, be readily reconciled by the difference in the state of facts which each case presented.

The testimony in this case tends to show that there were passenger and box cars standing on the north side track that obstructed the view of the main track, and prevented the plaintiffs from seeing the approaching train until they came nearly on a line with the side track. The distance from the wagon-shop—alluded to in the testimony—to the north side track is about seventy-five feet. The distance from the south rail of the north side track to the north rail of the main track is twenty-one feet. There is some testimony tending to show that there were places between the wagon-shop and the north side track where the plaintiffs, if they had been looking in that direction, might have seen the approaching train. The evidence tends to show that they could have seen the approaching train before they crossed over the north side track if they had been looking in that direction. Some of the witnesses testified that if plaintiffs had stopped for one quarter of a minute the collision would

not have occurred.   The team was constantly moving from the time it left the stable until it arrived at the north side track.   The wagon did not make much noise until it got on the track.   Harrison says:  "The wagon made a noise, but not enough to dim my hearing from anything else."

The testimony tended to show that defendant, in running its passenger train down the grade before arriving at the crossing, where the collision occurred, did not use any steam; that the train was worked by air brakes, and that the noise of the approaching train was not near as great as if steam had been applied.

The plaintiff Bunting testified that he was familiar with the crossing and with the trains of the defendants' cars that were running on the road, and knew the time of their usual arrival and departure; that whenever he crossed the track, which was quite frequently, he was always on his guard; that on the morning of the accident he left the stable a little after seven o'clock, and drove directly to the track at a slow trot; that he "looked up the track and down and saw nothing;" that as he came near the north side track, opposite the box or passenger cars, he heard a rumbling sound. To quote his exact language: "It sounded as if the locomotive was moving, and then I saw the locomotive was coming, and Harrison looked up and said, ' My God, we are killed!' and he grabbed the lines, and I struck the off horse with the whip.   As I moved around, and came quartering down the track, I hit the off horse; then the train struck me.   I heard no sound whatever.   It was just like the rumbling of a train switching down cars.   The noise I thought I heard was the train coming west, and I have often taken notice that it sounds as if it was down the track, passing the streets on that side.   When a train is coming from the west, and passing along the open streets west of this main crossing, the sound will be echoed there.   I was almost sure that the rumbling sound that I heard was the lower locomotive that was moving.   I looked that way to see before I got on the track.   I saw the train was standing and I kept on going on a fast walk."

Harrison's testimony is substantially the same.   He said:

"I did not hear the train coming. I looked up to see if there was a train coming. I looked when I got to the corner of the blacksmith shop. I did not see any train from there. I looked from the west and also down. Just as we started to go on the track I first heard the sound of the train. There was a string of cars as we started to go up on the track. As we crossed I did not see any train. When they were within twenty or thirty feet, right on top of us, I first heard the train. We could not move either way. When I saw her coming through the string of cars that backed up the track I grabbed the lines and hollered out, 'We are killed!' That is the first sound I heard. When I first saw the train the fore wheels were not quite on the first track. I was looking up in that direction. Most of the time I felt as if we could get across in the wagon. I saw nothing to interfere up to that time. To my knowledge there was no signal or sound of warning given by the train."

In our opinion the real question, upon which the decision in this case must necessarily turn, is whether or not in law the plaintiffs' were bound, in the exercise of proper care, to have stopped their team and listened for the approach of the coming train.

The testimony of several witnesses is very positive and direct that if the plaintiffs had stopped at any point between the corner of the wagon shop and the north side track and listened, they could have heard the rumble of the approaching train.

An examination of the authorities which we had occasion to review in *Solen* v. *Virginia and Truckee Railroad Company*, and of other cases to which our attention has since been called, leads us to the conclusions that where a traveler, knowingly about to cross a railroad track at a regular crossing on a public street of any town or city, can have an unobstructed view of the railroad so as to know of the approach of a train, a sufficient time to clearly avoid any injury from it, and he fails to use his ordinary faculties and an injury occurs, he can not, as a matter of law, recover, although the railroad company may also have been negligent; but, on the other hand, if the view of the railroad, as the cross-

ing is approached, is so obstructed by the act of the railroad company as to render it difficult or impossible to learn of the approach of a train, or there are peculiar or complicating circumstances calculated to deceive or throw the traveler off his guard, he has the right to presume that the usual and proper signals of the approaching train will be given by the railroad company, and if they are not given, then whether it was negligence on his part, under the particular circumstances of the case, is always a question of fact for the jury to determine. Although the traveler, whenever so situated as to enable him to do so, must make vigilant use of his eyes and ears in approaching a railroad track to ascertain if there is a train coming, he is not always bound to stop for the purpose of listening.

In *Pennsylvania Railroad Company* v. *Beale,* the railroad, from "natural and other obstructions, could not be seen nor the whistle heard," and the court held that the failure of the traveler to stop before crossing was "negligence *per se* and a question for the court." (73 Pa. St. 504.)

In *Flemming* v. *The Western Pacific Railroad Company,* the plaintiff was driving along the county road, which was extremely dusty. In front of him were other wagons, " which, together with his own, raised a cloud of dust which was so dense that he could not see the railroad track," and the court very properly held that "if his vision was so obscured by dust that he could not see a train within fifty feet of him, the most ordinary prudence would have suggested the necessity of stopping his team, that he might listen, under the most favorable circumstances, to ascertain whether a train was approaching."

In *Mackay* v. *New York Central Railroad,* where the difficulty of crossing the track had been caused by the defendant itself in erecting a building and piling up wood so as to entirely obstruct the view, the court quotes with approval the remarks of the justice who gave the opinion at general term that no case had gone to the length of holding "that a person approaching a railroad crossing was bound to stop his team and wait until he could ascertain whether a train was coming, or to leave his team and go and look up and

down the track, or the law would hold him" negligent. (35 N. Y. 78.)    To the same effect are the subsequent decisions of the court in *Davis* v. *N. Y. C. & H. R. R. Co.*, 47 N. Y. 402, and *Dolan* v. *D. & H. C. Co.*, 71 N. Y. 288.)

In *Duffy* v. *The Chicago and Northwestern Railway Company*, the railroad track approached the highway through a deep cut in such a manner as to prevent a person approaching along the highway from the south from seeing a train coming from the north until he came very near the track. Cole, J., in delivering the opinion of the court, upon the question of contributory negligence, said: "It does not appear that the plaintiff was guilty of any carelessness or want of care in approaching the crossing. He says that he listened some for the train, but did not hear anything. He supposed the train from the north had passed down, and he was looking out for the train from the south more than from the north. The track at the north was so obstructed by the high bank on the right that it was impossible for the plaintiff to see the train approaching from that direction, until he was within fifteen feet of the track. All the precaution he could take to ascertain whether a train was approaching was to listen as he advanced towards the crossing, unless he stopped his team, got out of his wagon and went upon the track and looked north for the train. But this would be exercising extraordinary care and diligence, greater than the law imposed upon him." (32 Wis. 274.)

Some stress was made in the oral argument upon the fact that the plaintiffs did not in direct terms testify that they listened at all. It is, perhaps, enough to say of this objection, that the testimony fails to show beyond controversy that if they were listening they could have heard the rumbling sound of the train any sooner than they did while their wagon was in motion, and unless they were in law bound to stop their team, their negligence in this respect, if established, would not necessarily determine that they were not in the exercise of due care. But we think their testimony, when fairly considered, clearly shows that they were listening, although they did not, in direct words, so

state. (*Ernest* v. *Hudson River Railroad Company*, 39 N. Y. 64.)

It was also claimed that the plaintiffs were negligent in not stopping their team at the north side track when they saw the train coming. Upon this point the authorities justify the statement that courts are not inclined, as a matter of law, to hold parties negligent in such a case of emergency for not acting coolly and wisely. (Wharton on Negligence, sec. 304.)

The plaintiffs, after arriving at the north side track, had no time for cool deliberation as to the best course to pursue. The schedule time for the passenger train to arrive at Reno was seven o'clock. It did not arrive that morning until half-past seven. The plaintiffs were under the impression that the train had passed by, until they heard the rumbling sound as they came upon the track. Like the plaintiff in *Duffy* v. *The Chicago and N. W. R. R. Co.*, *supra*, they first thought the sound came from a train approaching from the opposite direction, and looked that way, and, as Bunting testifies, when they saw the train coming " there was no chance to escape." Certain it is, that the situation in which plaintiffs suddenly found themselves placed was one of great peril. They had but little, if any, time to make even a hasty survey of the field of danger and decide correctly as to their chances. They were liable to be alarmed and excited and to err in their judgment. The law in such cases does not demand the exercise of the soundest discretion without regard to the surrounding circumstances. (*Robinson* v. *W.P. R. R. Co.*, 48 Cal. 421; *McGovern* v. *N. Y. C. & H. R. R. Co.*, 67 N. Y. 421; *Moore* v. *Central Railroad*, 47 Iowa, 690; *Larrabee* v. *Sewall*, 66 Me, 381.)

The question, therefore, whether plaintiffs then, as well as at any other time, acted with as much care and prudence as an ordinarily prudent and reasonable person, in a fair and reasonable endeavor to perform his duty and avoid danger, would exercise under similar circumstances, was, in our opinion, a question of fact that ought to have been submitted to the jury.

Upon a careful examination of all the testimony in this

case, we think the question whether plaintiffs were guilty of contributory negligence, whether they exercised ordinary and reasonable care, is not free from doubt. In our opinion the proper solution of this question upon the record presented to us is dependent "upon a state of facts in regard to which reasonable men might honestly differ;" and that, upon the principles established by this court in *Solen* v. *V. & T. R. R. Co.*, and sustained by the great weight of authority, the plaintiffs were entitled to have the question submitted to the jury as a question of fact.

In addition to the authorities cited in *Solen* v. *V. & T. R. R. Co.*, see *Hays* v. *Miller*, 70 N. Y. 116; *Dolan* v. *Delaware and Hudson Canal Co.*, 71 N. Y. 288; *Cook* v. *Union Railway Company*, 125 Mass. 57; *Bonnell* v. *The Delaware, L. and W. R. R. Co.*, 39 N. J. L. 189; *Fernandez* v. *The Sacramento City Railway Company*, 52 Cal. 45.

The judgment of the district court is reversed and the cause remanded for a new trial.