[No. 1,041.]

A. J. BUNTING AND M. HARRISON, RESPONDENTS, *v.* THE CENTRAL PACIFIC RAILROAD COMPANY, APPELLANT.

NEGLIGENCE OF RAILROAD COMPANY—NEGATIVE AND POSITIVE TESTIMONY—CONFLICT OF EVIDENCE.—Upon the question whether defendant rung its bell or blew its whistle there were several witnesses, upon the part of plaintiffs, who testified that they were in a position where they could have heard the signals had they been given, and that the signals were not given: *Held*, that this negative testimony raised a conflict of evidence against the affirmative testimony of defendant's witnesses, that the bell was rung and the whistle blown.

CONTRIBUTORY NEGLIGENCE — INSTRUCTION. — The court instructed the jury that if they believed from the evidence "that the engineer who was driving the express train on the morning of June 12, 1877, had an opportunity to see Bunting's team on the main track, and could have stopped his train with safety to the same, and to the passengers and railroad employees on same in his then situation, and could prudently have avoided

collision with his team, his failure so to stop amounts to negligence, and renders the defendant liable for damages, and such liability attaches even though the plaintiffs contributed to the injury by their own carelessness or negligence:" *Held*, that, although this instruction is carelessly drawn, the principle of law embodied therein is not erroneous. (Belknap, J., dissenting.) .

Idem—Applicability of Instruction—Jury not Misled.—Upon a review of the testimony and of the several instructions given by the court upon the question of negligence: *Held*, that there was some evidence to which the instruction might apply, and that the jury could not have been misled, by the giving of this instruction, to the prejudice of the defendant, as to the law of the case. (Belknap, J., dissenting.)

Conflict of Evidence — Whether Plaintiffs could have Seen the Train—Upon a review of the testimony, in response to petition for rehearing: *Held*, that there was a conflict of testimony as to whether the plaintiffs might have seen the train of the defendant had they looked, and might have heard the train of the defendant had they listened.

Idem—Reasonable Care.—The question for the jury and court to decide was not "whether the plaintiffs might have seen the train of the defendant had they looked" at some particular point, but whether, under all the facts and circumstances testified to in this case, they made reasonable efforts to see and hear the approaching train, and, in this respect, exercised the due care and caution which the law requires.

Reasonable Care—Duty of Railroad Company to Stop its Train in Case of Great Peril.—Railroad companies, as well as travelers, must exercise reasonable care and caution, and in the present case, although the plaintiffs may not have been entirely free from fault, if the engineer of defendant's train saw the plaintiffs' team, as it was coming upon the track, in a position of great peril and danger, and he could, by the exercise of reasonable care, have lessened the speed of his train, or stopped it, with safety, in time to have avoided the collision, it was his duty to. do so.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts sufficiently appear in the opinion

*W. H. L. Barnes*, for Appellant:

I. The evidence is insufficient to justify the verdicts in these cases; because the whole evidence shows that the appellant was guilty of no negligence, and that the respondents were. (Testimony reviewed at length.)

II. The whole case showed that the plaintiffs were guilty of contributory negligence; and demonstrated that they could have seen and heard the train by the ordinary exer-

cise of the faculties of seeing and hearing; and could have known of the approach of the train in sufficient time to clearly avoid any injury from it.    (Testimony reviewed.)

III. The first instruction given. by the court to the jury at the request of the plaintiffs was erroneous.    It was wholly unjustified by the evidence.    No instruction should ever be given unless there is some evidence before the jury to which it is applicable upon some rational theory of the case logically deducible from such evidence.    The instruction was upon an abstract proposition not before the jury, and was calculated to .mislead them.    For this error a new trial should be granted.    (*Slaughier* v. *Fowler;* 44 Cal. 195; *Mendelsohn* v. *Anaheim L. Co.*, 40 Id. 657.)    But if it can be said that the instruction was possibly pertinent, it was contradictory to and inconsistent with instruction No. 4, given by the court of its own motion, and for this reason a new trial should be granted.    (*Brown* v. *McAllister*, 39 Cal. 577; *McCreery* v. *Everding*, 44 Id. 251.)

Upon petition for rehearing the following authorities were cited: *Railroad Co.* v. *Houston*, 95 U. S. 697; *Harper* v. *Erie Railroad Co.*, 32 N. J. L. 88; *Chicago & N. R. R. Co.* v. *Demick*, 96 Ill. 42; *Schofield* v. *Chicago & M. & S. P. R. R. Co.*, The Reporter, November 2, 1881; *Gothard* v. *Alabama S. R. R. Co.*, The Reporter, July 20, 1881.

*Thomas E. Haydon*, for Respondents:

I. There is abundant evidence that no signals by bell or. whistle or otherwise were given.    This is proven by plaintiffs and numerous witnesses, that they did not hear them. Defendant's witnesses testified that they did hear them. That makes a case of conflict of evidence.    (1 Thomp. on Neg. 432.)

II. There is not any absolute or irreconcilable repugnancy between the instructions.    The first instruction is law.    (Whart. on Neg., sec. 388.)

By the Court, HAWLEY, J.:

This is the second appeal taken in these cases.    The first was an appeal by plaintiffs from a judgment of nonsuit (14

Nev. 351.) The second is taken by defendant from a judgment in favor of plaintiffs and from an order of the district court refusing to grant a new trial. It was correctly assumed in the argument, by appellant's counsel, that the law of these cases is settled by the previous decision, and that of *Cohen* v. *The Eureka and Palisade Railroad Company,* 14 Nev. 370. It was also properly admitted that "the testimony offered on behalf of the plaintiffs upon the second trial was substantially identical with that offered upon the first."

Appellant, upon this appeal, admits that in the light of the former decision, the plaintiffs' testimony made out a *prima facie* case against the defendant; but it is claimed that, upon the whole case, the evidence is so overwhelmingly in favor of the defendant that the verdict in favor of plaintiffs ought to be set aside. The rule, so often declared by this and other courts, that an appellate court will not set aside a verdict upon the ground of the insufficiency of the evidence, or review the weight of testimony where there is a substantial conflict of evidence, was recognized throughout the entire argument. In this connection it was with great energy, and an ingenious selection of portions of the testimony of several witnesses, sought to be shown that the testimony submitted on the part of the plaintiffs was so slight, negative, and indefinite, and the testimony on behalf of the defendant so strong, positive, and clear, that it ought not to be said that there is any conflict in the evidence.

In view of this argument we have carefully read and considered all of the testimony submitted by the respective parties, and our conclusion is that upon all the material questions there is a substantial conflict in the evidence, In determining the question whether the bell was rung or the whistle blown we agree with the appellant, that a mere "I did not hear it" is entitled to but little, if any, weight in the presence of affirmative evidence that these signals were given. But that is not, in our opinion, a fair statement of the facts of this case. The evidence amounts to more than a mere "I did not hear it." Several of the witnesses upon the part of the plaintiffs were in a position where they could and

ought to have heard the signals had they been given. Some of them were looking and listening for the train, and state positively that they could have heard the usual signals if they had been given. Both of the plaintiffs swear positively that the signals were not given. Quinn was positive that no bell was rung or whistle sounded. McClelland was positive that the bell was not ringing. Buncell, Holliday, Brown, and others testified that they could have heard the bell, if it had been ringing, and that they did not hear it. This, in our opinion, raises a conflict of evidence against the affirmative testimony of defendant's witnesses.

The question whether negative testimony can, in any case, have the force and effect of positive testimony was considered by this court in *Cohen* v. *Eureka and Palisade Railroad Company*, 14 Nev. 386, and it was there declared that where the witnesses were in a position to hear, their testimony that the bell was not rung "was just as positive as such testimony can ever be."

In *Renwick* v. *New York C. R. R. Co.*, 36 N. Y. 132, the court, in passing upon this question, said: "As some of the plaintiffs' witnesses were in a condition to hear it (the bell) if it had been rung, and were giving their attention to the train, the fact that they did not hear it is evidence conducing to prove that it was not rung. * * * The conflict raises a question of fact, which the plaintiff had the right to have determined by the jury." To the same effect see *Byrne* v. *New York C. & H. R. R. Co.*, 14 Hun, 322; *Dublin W. W. & R. R. Co.* v. *Slattery*, 3 Appeal Cases (L. R.), 1155. In the case last cited there were ten witnesses who testified that the whistling occurred at the proper time and in the usual way, and only three witnesses testified that, being in a position in which, if it so occurred, the sound should have reached their ears, they did not hear it. Lord O'Hagan, in giving his views upon this state of facts, said: "It is impossible not to be struck by the apparent weight of the defendant's proof. But, as was observed in the Irish court of common pleas, the jury saw the witnesses, and the judge did not condemn the verdict. And whether it was right or wrong, the jurors alone were competent, legally and

constitutionally, to decide between the ten who testified on the one side and the three who testified on the other. It was urged, and the authority of an eminent judge was vouched to sustain the suggestion, that proof of the want of hearing was no material proof at all. But this seems to me untenable. Assuming that a man stands in a certain position, and has possession of his faculties, the fact that he does not hear what would ordinarily reach the ears of a person so placed, and with such opportunities, seems to me manifestly legal evidence, which may vary in its value and persuasiveness, which may in some instances be of small account, and in others be the strongest and the only evidence possible to be offered; but at all events can not be withheld from the jury; and if this be so, *there was here a conflict of testimony* on which the jurymen, and they alone, were competent to pronounce."

In *Kansas Pacific Railroad Co.* v. *Richardson,* which in many respects was similar to the case in hand, Horton, J., in delivering the opinion of the court, said: "Though most of this evidence on the part of the plaintiff below was of a negative character, and the company gave positive evidence of a greater number of witnesses to contradict and overcome it, still there was a sufficient conflict of evidence to raise a question of fact, which the trial court was justified in submitting to the jury. The evidence against the giving of the signals was more, when carefully considered, than a mere 'I did not hear.' Some of these witnesses had their attention directed to the train as it came in; they were looking at the train, and were in a position to give heed to the presence or absence of the signals. The evidence conduced to prove that the signals were not properly and timely given; at least it was some evidence in that direction. The failure to give signals must be proved by witnesses that they did not hear them. When others testify that they gave them and others testify that they did not hear them, there is evidence on both sides to be considered. The evidence before the court being sufficient to be submitted to the jury, and to be considered by them, it was sufficient to sustain a finding that proper signals of warning of the approach of

the train to the crossing were not given." (The Reporter, vol. XII., No. 16, 493.) We are of opinion that the vital question whether plaintiffs were guilty of contributory negligence, whether they exercised ordinary care and caution, was properly left to the jury for decision, and that, inasmuch as there is a substantial conflict in the testimony offered by the respective parties, the verdict of the jury ought not to be disturbed upon the ground of the insufficiency of the evidence.

It is next argued that the court erred in giving the first instruction asked by plaintiffs. This instruction reads as follows: "The jury are instructed that it is as much the duty of a railroad engineer to exercise prudence and caution in running his train, so as to avoid injury to persons crossing a track, as it is the duty of such persons to avoid contact with the train. Therefore, if they believe from the evidence that the engineer who was driving the express train on the morning of June 12, 1877, had an opportunity to see Bunting's team on the main track, and could have stopped his train with safety to the same, and to the passengers and railroad employees on same in his then situation, and could prudently have avoided collision with the team, his failure so to stop amounts to negligence, and renders the defendant liable for damages, and such liability attaches even though the plaintiffs contributed to the injury by their own carelessness or negligence." The first portion of this instruction is not objected to. The latter portion is carelessly drawn, and it is not as clear as it might have been made; but the principle of law embodied therein is not erroneous.

The questions ordinarily applicable to cases like this are, first, whether the damages were occasioned entirely by the negligence of the defendant, or second, whether the plaintiffs so far contributed to the injury by their negligence or want of ordinary care and reasonable diligence, that, but for such negligence or want of ordinary care and caution on their part, the accident would not have happened. In the first place, if the question was answered in the affirmative, the plaintiffs would be entitled to recover, in the second they would not; as but for their own fault the accident

would not have happened.    But it does not necessarily follow that the damages must have been occasioned solely by the negligence of the defendant, for if the plaintiffs were in a remote degree negligent, but their negligence was not the proximate cause of the injury, and they exercised ordinary care to avoid the injury, they would still be entitled to recover; and although the plaintiffs may not have been entirely free from fault, they would, nevertheless, be entitled to recover if the defendant, in the exercise of ordinary care and caution, could have prevented the injury.

This last qualification is applied in a great variety of cases, the most frequent of which, as found in the books, is where cattle are injured upon the track of a railroad and where the engineer of the train could, after seeing them, by the use of ordinary care upon his part, have avoided the injury; but it is proper to be given in all cases where there is any testimony tending. to show that the defendant was guilty of gross or willful negligence.

The views we have expressed upon this point are sustained by abundant authority.    (*Butterfield* v. *Forrester*, 11 East, 60; *Bridge* v. *The Grand Junction R. R. Co.*, 3 M. & W. (Exch.), 244; *Davies* v. *Mann*, 10 M. & W. (Exch.), 545; *Tuff* v. *Warman*, 94 Eng. Com. Law, 584; *Bradley* v. *London & N. W. R. R. Co.*, 1 Law Rep. (appeal cases), 759; *Solen* v. *& V. T. R. R. Co.*, 13 Nev. 106; *Kansas Pacific R. R. Co.* v. *Pointer*, 14 Kan. 37; *Morrison* v. *The Wiggins Ferry Company*, 43 Mo. 383; *Brown* v. *The Hannibal & St. Joseph R. R. Co.*, 50 Mo. 465; *Kerwhaker* v. *Cleveland, C. & C. R. R. Co.*, 3 Ohio St. 172; *Northern Central R. R. Co.* v. *Price*, 29 Md. 437; *Baltimore & Ohio R. R. Co.* v. *Dougherty*, 36 Md. 368; Wharton on Negligence, sec. 388; Shearman & Redfield on Negligence, secs. 36, 493.)

The important question, presented by the testimony, was whether the plaintiffs exercised ordinary care and caution, and the principal objection, urged by appellant's counsel, to the instruction is, that it was not applicable to any evidence in the case.    We are, however, of the opinion that there was some evidence that justified the giving of a proper instruction upon this point.    There was testimony offered

by both parties as to the distance within which the train might have been safely stopped. Kemp, a witness for plaintiffs, testified that a train running at the rate of twenty miles an hour could be safely stopped, by the use of air brakes, in one hundred and twenty-five yards; that if the train was stopped in two hundred and twenty-five feet it would indicate a speed of about twelve miles an hour. The testimony upon the part of the defendant tended to show that the train was stopped within a distance of about two hundred and fifty feet.

It is true that this testimony was offered for the purpose of showing the rate of speed at which the train was moving. But it is not improper to consider it with reference to another branch of the case. The defendant, for the purpose of showing that plaintiffs did not exercise ordinary care, introduced several witnesses whose testimony tended to show that the obstructions upon and along the north side track did not prevent the plaintiffs from seeing defendants' train at distances varying, as they approached the main track, from one hundred to five hundred feet, in ample time, after arriving at the north side track, to have stopped their team if they had been looking in that direction, and thereby have avoided the injury.

This testimony, like the edges of a sword, cuts both ways. While it tended to prove a want of care upon the part of plaintiffs, it also tended in another direction to prove gross negligence on the part of the defendant. There was a decided conflict of evidence upon this point. If the jury believed the testimony upon the part of the defendant, it would have been their duty to determine whether the engineer of the train, had he been keeping a reasonable lookout, as it was his duty to do, could not have seen the horses attached to plaintiff's wagon before, or at least as soon as, the plaintiffs could have seen the train; and in view of this testimony it was, perhaps, proper for plaintiffs to ask the court to submit to the jury the question whether the defendants' engineer could not, by the exercise of ordinary care and caution, after discovering plaintiff's team, have lessened the speed

or stopped the train, with safety, in time to have avoided the collision.

We are free to confess that we do not think it was necessary to introduce this element of gross or willful negligence into the case; but we are unwilling to say that there was no evidence to which the instruction might apply. The fact is that the testimony of the defendant's engineer, evidently offered for the purpose of showing that he was not at fault, as might be inferred from the testimony of other witnesses, tended to support the plaintiffs' theory that the obstructions on and along the north side of the track prevented them from seeing the train in time to avoid the collision. This engineer testified that he was sitting in his usual place looking ahead and that he did not see the horses until the locomotive was right on to them, and that it was impossible for him to have checked the speed of the train, or stopped it in time to prevent the collision.

But even if we should concede that the instruction was to some extent inapplicable to the facts, it would not necessarily follow that the judgment should be reversed; certainly not, if it is apparent from a consideration of all the instructions that the jury could not have been misled thereby.

It is argued by appellants' counsel that the instruction is contradictory to and inconsistent with instruction number four, given by the court of its own motion, as follows:

"If you should believe from the evidence that the defendant was guilty of culpable negligence in running its train of cars into Reno on the morning of the twelfth of June, A. D. 1877, nevertheless, the plaintiffs can not recover, if they could have avoided the injury by the exercise of ordinary care."

If these were the only instructions given, the objection would have more force. But from an inspection of the record it clearly appears that instruction number four was given upon the theory that if plaintiffs' negligence was the proximate cause of the injury they could not recover, and that the jurors, as reasonable men, must have so understood it, and that the instruction given at the request of plaintiffs

introduced another and different element for their consideration.

In *Radley* v. *London & N. W. R. R. Co.*, *supra*, Lord Penzance said that the law in these cases of negligence was well settled. "The first proposition is a general one, to this effect, that the plaintiff in an action for negligence can not succeed if it is found by the jury that he has himself been guilty of any negligence or want of ordinary care which contributed to cause the accident. But there is another proposition equally well established, and it is a qualification upon the first, namely: that though the plaintiff may have been guilty of negligence, and although that negligence may, in fact, have contributed to the accident, yet, if the defendant could, in the result, by the exercise of ordinary care and diligence, have avoided the mischief which happened, the plaintiff's negligence will not excuse him."

In *Brown* v. *The Hannibal & St. Joseph Railroad Co.*, *supra*, the lower court instructed the jury as follows: "Even if the jury should believe from the evidence that the plaintiff was guilty of negligence or carelessness which contributed to the injury, yet if they further believe from the evidence that the agents or servants of defendant, managing the locomotives or machinery of the defendant with which the injury was inflicted, might have avoided the said injury by the use of ordinary care and caution, the jury will find for plaintiff."

The supreme court said that this instruction was "entirely unobjectionable." In that case, as well as in this, it was argued that the negligence on the part of the plaintiff was "unaccountable and inexcusable," and that her carelessness was entirely inconsistent with the right to recover damages "founded on the negligence of the defendant."

The rule is well settled that all the instructions must be considered together, in order to determine whether or not the jury may have been misled. In the present case the jury were repeatedly told, in the instructions of the court, that if they believed, from the evidence, that the plaintiffs did not exercise ordinary care and diligence, or that their

negligence was the proximate cause of the injury, they were not entitled to recover, although the defendant was negligent, in not ringing its bell or blowing its whistle, or running its train at an unusually fast rate of speed. This principle was presented in every imaginable form, at great length, as strongly in favor of the defendant as the law would warrant.

We quote but one instruction, in addition to number 4, among the many that were given, to illustrate the general principle announced by the court:

"Even though the jury may find that the defendant corporation did not on the occasion of the accident in all respects, or in any respect, fulfill any obligation it was under of giving usual and ordinary signals of its approach, so as to warn passers of the approach of its train, yet that circumstance, or those circumstances, does not and do not shield the plaintiffs from the exercise of ordinary care and prudence on their part. The fact, if the jury shall so find it, that the train of the defendant corporation approached the crossing of Sierra street without blowing any whistle, where the whistle had usually been blown theretofore, and without ringing any bell, does not of itself authorize the plaintiffs to recover damages, if the plaintiffs, notwithstanding the negligence of the railroad company, recklessly exposed themselves to danger; and if it appears to the jury that the injury complained of would not have occurred but for their own misconduct or negligence, they can not recover damages, but must bear the consequences of their own folly."

All that was said by the court, as to the right of the plaintiffs to recover, is embraced in the following instruction: "If you shall be of the opinion, after a full, fair, candid, and unprejudiced review of all the testimony given on behalf of the respective parties, that on the day and year, and at the place alleged in the complaint, the plaintiffs, while exercising that due care which a reasonably prudent man under the circumstances of the case would exercise, were injured and their property destroyed by being run into by the train of the defendant, and that the

collision was wholly caused by the neglect and carelessness of the defendant corporation, or that after discovering the plaintiffs upon the track, the defendant could have avoided the collision by the exercise of proper care, then the plaintiffs are entitled to a verdict, *and not otherwise.*"

We think it is manifest that the instructions given by the court, as well as some portions of the evidence, authorized the plaintiffs to ask and the court to give the instructions complained of, and that in any event, it is apparent from a careful consideration of all the instructions given, that the jury could not have been misled, to the prejudice of the defendant, as to the law of the case.

The judgment of the district court, in each case, is affirmed.

By Belknap, J., dissenting:

The first instruction, which is fully set forth in the opinion of the court, charged the jury that if the engineer of the colliding train could, with safety to the passengers and property in his charge, have stopped his train and thereby "have avoided collision with the team, his failure so to stop amounts to negligence and rendered the defendant liable, * * * and such liability attaches even though the plaintiffs contributed to the injury by their own carelessness or negligence."

It is a general principle of the law of negligence that a plaintiff can not recover damages for injuries to which himself has contributed. In order, however, to bar a recovery the negligence of the plaintiff must be the proximate cause of the injury; it must be negligence occurring at the time the injury happened. If the defendant, after becoming aware of plaintiffs' danger, could have avoided the injury by the exercise of ordinary care, an action may be sustained, notwithstanding plaintiff may have been remotely negligent in exposing himself to such danger.

It was therefore held in the case of *Davies* v. *Mann*, 10 M. & W. 547, the leading case upon the subject of negligence in a plaintiff which will not disentitle him to recover, that the plaintiff could recover notwithstanding he had.

negligently left his donkey to graze upon the highway with its forefeet so fettered as to be unable to get out of the way of passing wagons, and while so situated was killed by the negligent act of defendant in driving his horse and wagon against it. The court based its decision upon the ground that the mere fact of that negligence on the part of the plaintiff in leaving his donkey upon the public highway was no answer to the action, unless the donkey's being there was the immediate cause of the injury; but that, if the immediate cause of the injury was the negligent and too rapid driving of defendant's servant, plaintiff could recover. "For, although the ass may have been unlawfully there," said the court, "still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a man might justify the driving over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road."

This subject was considered and the doctrine well stated in *B. & O. R. R. Co.* v. *Trainor*, 33 Md. 542, a case in which plaintiff's intestate was killed in walking upon a railroad track. Said the court: "It is argued that if the deceased walked on the track, and his walking on the track was want of ordinary care, and the accident would not have happened if he had not walked on the track, then such walking was the proximate cause of the accident, and the plaintiff can not recover. * * * By 'proximate cause' is intended an act which directly produced, or concurred directly in producing, the injury. By 'remote cause' is intended that which may have happened, and yet no injury have occurred, notwithstanding that no injury could have occurred if it had not happened. No man would ever have been killed on a railway, if he had never gone on or near the track. But if a man does, imprudently and incautiously, go on a railroad track, and is killed or injured by a train of cars, the company is responsible, unless it has used reasonable care and caution to avoid it, provided the circumstances were not such, when the party went on the track, as to threaten direct injury, and provided that

being on the track he did nothing, positive or negative, to contribute to the immediate injury."

It has accordingly been held that if the owner of cattle suffer them to range at large, and they stray upon a railway track and are run over by passing cars, such owners may recover damages if the injury could have been avoided by the exercise of ordinary care upon the part of the railroad engineer. In the class to which cases of this nature belong (and many of them are cited in the opinion of the court) it will be observed that the plaintiff has been guilty of some degree of negligence touching his person or property, but such negligence was the remote and not the proximate cause of the injury. In such cases it is well settled that a recovery may be had. An examination of the facts of this case, however, has convinced me that the general doctrine under consideration (and which I can not admit was correctly expressed in the instruction) was inapplicable and misleading.

Here are the facts: Upon the morning of the accident the plaintiffs were driving two horses before an open wagon in a southerly direction along Sierra street, a public street in the town of Reno, crossed at right angles by defendant's railroad track. In attempting to cross the track the wagon was struck by a train of cars approaching from the west, and plaintiffs injured in their persons and property, as complained of. Plaintiffs' theory was that as they approached the crossing their view of the main track and of the colliding train moving upon it was obstructed, not only by buildings along the west line of Sierra street, but by passenger and box cars upon a side track, and quantities of wood unloaded from defendant's cars. They show that the train approached the crossing where the collision took place upon a descending grade, at a high rate of speed, and claimed that it gave no warning by bell or whistle of its approach.

From these facts I conclude that no question of remote negligence was or could have been presented. If plaintiffs were negligent at all, such negligence arose from their failure to listen for signals of the approaching train, or to have seen the approach of the train, if that were possible, in

time to have avoided the collision. But if they neglected to exercise ordinary caution and were negligent, their negligence occurred at the time of the accident. Such negligence, if it existed, was the proximate cause of the injury, and would defeat a recovery under all of the authorities. And it is equally well settled that, if the negligence was mutual, and the negligence of each party was the proximate cause of the injury, no action can be sustained.

. In justification of the instruction it is said that some testimony was introduced by defendant tending to show that plaintiffs could have seen the approaching train in time to have avoided the collision, and, that, if this were so, such testimony at the same time proved that the engineer could have seen the plaintiffs and avoided the accident. If it be conceded that the engineer could have seen plaintiffs in time to have avoided the accident, it must be admitted that plaintiffs could have seen the approach of the train. If they did not see it when they could have seen it, or seeing it assumed the hazard of crossing, they were alike guilty of contributory negligence. Nor was the error in this portion of the charge nullified by the giving of other instructions upon the subject of contributory negligence favorable to appellant. It was as much the duty of the jury to obey the instruction that was incorrect as it was their duty to obey the correct instructions. As the instructions were irreconcilably conflicting, the jury may have been misled.

For these reasons I think the judgment and order of the district court should be reversed.

RESPONSE TO PETITION FOR REHEARING.

. By the Court, HAWLEY, J.:

· In my opinion the decision heretofore rendered is sufficiently explicit upon all the points discussed in the petition for rehearing; but there are two questions presented which we will answer.

1. "Was there a substantial conflict in the testimony offered by the respective parties upon the question as to whether the plaintiffs might have seen the train of the de-

fendant had they looked, and might they have heard the train of the defendant had they listened?"

We think, and it is so announced in the opinion of the court, that there is a decided conflict of evidence upon this point. It is true that we only discussed the question of conflict of evidence as to whether "the bell was rung and a whistle sounded;" because, in our opinion, there was less conflicting testimony upon that point than upon the one we are now asked to review. But we did examine all the evidence carefully, and considered all the questions raised by appellant, and stated, in direct terms, our conclusion to be "that upon all the material questions there is a substantial conflict of evidence."

The plaintiffs testified that as they approached the crossing they both looked and listened in order to ascertain whether a train was approaching; that they did not hear any bell rung or whistle sounded; that they were prevented from seeing the train by "the cars on the upper side of the track" and the woodpiles; that a train of cars was on the side track below the crossing; that as they approached the north side track the engine of the lower train "was blowing off steam;" that the near horse became frightened at this noise and his shying drew the team to the upper edge of the track. Bunting says that upon coming upon the north side track he "heard a low rumbling sound;" that he thought it was the lower train starting, and he looked down and saw that train standing still, and as he looked up he saw the approaching train too near for him to either stop his team or to cross the main track in time to avoid the collision. To quote from the record: "When I looked down I noticed the train still standing, and just at that time, at that second, Mr. Harrison grabbed the lines and exclaimed: 'My God, we are killed!' and I looked up and saw the approaching train.

"Q.—What did you do then? A.—As soon as I saw it I had no time to pull the horses up, they got so far that I couldn't get them off the main track. I pulled them around and hit the off horse once or twice—twice, I think.

"Q.—Pulled them around east? A.—Yes, sir.

" Q.—What was your idea in pulling them around that way? A.—To save my team and myself. I thought that I could get off the track, but my wagon wouldn't turn short enough.

" Q.—You did try to turn them off the track? A.—Yes, sir. I saw that I had no time to get over the track, and I tried to pull them round.

" Q.—State to the jury what would have been the result had you, instead of pulling them around as you did, have attempted to have gone straight over the track? A.—I don't think I had time to get over the track.

" Q.—Did you have time? A.—No, sir.

" Q.—Suppose you had gone on, instead of pulling them around as you did, what would have been the result * *? A.—I think the locomotive would have got me somewhere in the middle of the wagon—probable in the back end—if I had rushed my team over, loaded as I was with eighteen hundred pounds on the wagon.

" Q.—When you first noticed that train * * * could you have backed your horses and have got to the north of the train? A.—No, sir."

The testimony of the witnesses Wheeler, Buncell, Mc-Clelland, McFarland, Bates, and Faloon tended to corroborate plaintiffs' statement.

Wheeler testified that he walked from McFarland's shop to the track; "that the cars and wood obstructed a view of the main track up to the center of the second block above; in fact, you couldn't see Bragg's lumber yard," a half a mile above the crossing.

Buncell, in reply to the question, what "obstructions there were to sight or hearing" between "the north side track and McFarland's," said, "There were box cars clean up to Jamison's corner and on the other side of the crossing, * * * and then there was lumber and cordwood * * * thrown in piles, * * * some as high as the top of the doors of the box cars. * * * I saw the smokestack; that is all I could see until it struck the team. * * * I don't think they (plaintiffs) had as good a show to see it as I had from the distance I was off. * * *

I don't think they had any show of hearing the train; * * * there was no show for them to see the train, as Bunting was lower than the cars, * * * don't see how he could see the train."

McClelland, in answer to the question, "And then the obstruction caused by the train of cars on the side track, and the woodpile and lumber, etc.; taking into consideration all of these circumstances, would it be anything remarkable if Bunting couldn't hear the train approach?" said, "Under these circumstances, I think not."

Bates testified that he " drove across the track a very few minutes after Mr. Bunting, and there was a freight train backing down. I drove across the crossing before I saw it. I was very close. My off horse saw it before I did and he jumped across the track, and the train was very close to me when I got across."

"Q.—In passing over this point could you see anything of this train? A.—I didn't see it. The horses saw it and jumped as I passed by the cars.

"Q.—Did you see anything? A.—No, sir.

"Q.—Did you habitually look and listen for the train? A.—Always."

Faloon, who was standing near the tank north of the track, testified as follows:

"Q.—When did you first see the train? A.—Well, before Bunting got towards the railroad track I heard a kind of a dumb sound coming, and I imagined it was the train. I didn't see it at all until two seconds before it struck Bunting and his team.

"Q.—When his team got as far as the north side track, if he had looked up the track toward the west, do you think that he could have seen a train? A.—To the best of my opinion I don't think that he could from where he was, with the cars on the north side track. * * * I don't think that he could have seen the train. I don't think that he could over the cars."

We did not deem it necessary to criticise the form of the question, propounded by appellant's counsel, in answering the point now under consideration, because if "there was

a decided conflict of evidence upon this point," as we stated, that was, and is, not only a conclusive answer to the question, but is decisive of the case so far as this point is involved.

But inasmuch as the learned counsel has again referred, with so much confidence, to "the mathematical demonstration as to the ability of the plaintiffs to see the approaching train had they looked for it as they came near the crossing," and again argued the case upon the assumption that if it was possible for them to have seen the train at any given point before coming upon the main track, they were guilty of contributory negligence because they did not see it, we deem it proper to say that, in our opinion, the question for the jury and court to decide was not "whether the plaintiffs might have seen the train of the defendant had they looked" at some particular point, but whether under all the facts and circumstances testified to in this case, they made reasonable efforts to see and hear the approaching train and, in this respect, exercised the due care and caution which the law requires. (*Bunting* v. *C. P. R. R. Co.*, 14 Nev. 361; *Moore* v. *C. R. R. Co.*, 47 Iowa, 690; *Voak* v. *N. C. R. R. Co.*, 75 N. Y. 323; *Laverenz* v. *C. R. I. and P. R. R. Co.*, The Reporter, vol. 13, 45.)

In *Shaw* v. *Jewett* the facts were in many respects similar to the case under consideration. Folger, C. J., in delivering the opinion of the court of appeals, said: "The court was asked to charge the jury, that if they believed that the plaintiff could have seen the train at distance enough from the track to have stopped his horse before reaching the track, his failure to see the train was negligence on his part, and he was not entitled to recover. The court refused the instruction, and exception was taken. We think that the court did not err. The request was so couched, that if the proposition folded up in it had been given as law to the jury, it would have laid down as the rule that the plaintiff was bound to see the train at the distance named, if it were possible that it could be seen by any one from there. That is not the rule. The plaintiff is not bound to see. He is bound to make all reasonable efforts to see that a careful,

prudent man would make in like circumstances.   He is not to provide any certain result.   He is to make effort for a result that will give safety; such effort as caution, care, and prudence will dictate.   *   *   *   The question for the jury was not alone whether he could have seen the coming train at the indicated distance from the track, but whether, when at that distance, he looked and listened for it, and whether it was so plain that at, that distance he could and would have seen it if he had looked; that his not seeing it was proof that he did not look." (The Reporter, vol. 13, 22.)

2. We agree with counsel, that when a train is passing over the road, and the engineer, while keeping a reasonable lookout, "observes a team *at a safe distance from the track*, he is not required to slacken his speed or stop his train *   *   *   in order to ascertain whether the traveler upon the highway has made up his mind to pause and let the train go by, or to go upon the track and stop the train," but has the right, as we stated in *Solen* v. *V. & T. R. R. Co.*, 13 Nev. 123, "to act upon the assumption that a traveler, in walking upon or driving across its track, will use due care and prudence to avoid impending danger." (*Cohen* v. *Eureka & P. R. R. Co.*, 14 Nev. 394.)

There is nothing in the instructions reviewed by us, or in the opinion heretofore rendered, in conflict with these views.   But it is also the rule that railroad companies, as well as travelers, must exercise reasonable care and caution, and in the present case, although the plaintiffs may not have been entirely free from fault, if the engineer of defendant's train saw the plaintiffs' team, as it was coming upon the track, *in a position of great peril and danger*, and he could, by the exercise of reasonable care, have lessened the speed of his train, or stopped it, with safety, in time to have avoided the collision, it was his duty to do so.

Rehearing denied.

Belknap, J., did not participate in this decision.