## Chicago Union Traction Company et al. v. Alice M. Case, Administratrix.

### Gen. No. 12,805.

1. TRACTION COMPANY—*extent of obligation of, to repair streets.*
A traction company is under no common law obligation to keep
in repair that portion of streets upon which its right of way ex-
ists; such a duty, if it exists, must be imposed by statute or in
some other way; but such a company is under the obligation so
to construct and maintain its tracks as that by the exercise of
reasonable care and supervision with respect to them, no danger
will be occasioned to the public in its use of the highway.

2. PROXIMATE CAUSE—*what not, of injury complained of.* Held,
that the leaving of a switch leading into a barn turned in the
direction of the switch track into such barn, was not the proxi-
mate cause of the injury complained of.

Action on the case for death caused by alleged wrongful act. Ap-
peal from the Superior Court of Cook county, the Hon. ROBERT W.
WRIGHT, Judge, presiding. Heard in this court at the October term,
1905. Reversed with finding of facts. Opinion filed November 15,
1906.

Statement by the Court. The Superior Court ren-
dered judgment May 6, 1905, against the three ap-
pellants in favor of the appellee for $5,000. From this
judgment this appeal is prosecuted.

The judgment was on the verdict of a jury in a suit
brought for the benefit of the next of kin by appellee
as the administratrix of her intestate, one Charles E.
Case, for alleged negligence of the defendants to the
suit, causing the death of said Charles E. Case.

The suit was originally brought against the Chicago
Union Traction Company and the City of Chicago, but
thereafter the Chicago West Division Railway Com-
pany and the West Chicago Street Railroad Company
were made additional defendants, and an amended
declaration filed against the four defendants.

At the trial, before the case went to the jury, the
plaintiff discontinued as against the City of Chicago,

and all papers and proceedings by order of court stood amended accordingly.

The amended declaration contained three counts. The first count, however, was abandoned by the plaintiff at the trial.    The court instructed the jury to find the defendants not guilty as to the third count.    The verdict returned was, however, general in form, finding the defendants guilty and assessing the plaintiff's damages at the sum of $5,000; and the plaintiff, appellee here, claims that the instruction to find the defendants not guilty as to said third count was erroneous, and that as the plaintiff excepted to it, the case should be considered as though it had been submitted to the jury on both the second and third counts.

The second count alleged that on April 18, 1902, and for a long time prior thereto, the three defendants, the Chicago Union Traction Company, the Chicago West Division Railway Company and the West Chicago Street Railroad Company, owned, possessed and controlled a street railroad track with a certain switch or stub-track leading therefrom, situated in Clybourn place, a street in the city of Chicago, near where the said Clybourn place intersects Paulina street; that the plaintiff's intestate was an employe of the city of Chicago in its fire department, and was compelled to and did, as occasion might require, drive a hose cart along said Clybourn place in the locality indicated, and that by reason of the nature of his employment it was necessary that said portion of Clybourn place should be at all times kept by the city of Chicago free from all obstructions, holes, depressions and street railway tracks elevated above the surface of said street or laid, arranged or adjusted in such a manner as to not impede or obstruct the use of said street for the said purpose, so that the members of the fire department might use it for said purpose with reasonable safety to their lives and limbs, and that all of these facts were well known to the

Chicago Union Traction Company, Chicago West Division Railway Company and West Chicago Street Railroad Company. The count also alleged that "it then and there became and was the duty of said defendants," the three companies aforesaid, "during all the time aforesaid to refrain from laying, arranging, adjusting or elevating the said tracks or either of them, or any of the rails or other parts thereof to be laid, arranged, adjusted or elevated, in such a manner as to interfere with, impede or obstruct the free use of Clybourn place" for the purpose aforesaid, or in such a manner as to cause dangerous holes or depressions to be formed or remain in said street, thereby endangering the lives and limbs of the employes of the city of Chicago and members of its fire department having occasion to use said street; that, notwithstanding, these three companies "wrongfully, negligently and improperly laid, arranged, adjusted and elevated said tracks and each of them, and divers of the rails and other parts thereof at the place aforesaid, and suffered or permitted their said tracks and each of them and divers of the rails and other parts thereof to be and remain laid, arranged, adjusted and elevated in said wrongful, negligent and improper manner during all the time aforesaid, thereby impeding and obstructing the use of said Clybourn place, and said part of portion thereof, for the purpose aforesaid, and causing divers large holes and deep depressions to be formed and remain in said Clybourn place at the place aforesaid during all the time aforesaid, and said Clybourn place at said place during all the time aforesaid to be and remain in an unfit and unsafe condition for use as aforesaid for the purpose aforesaid."

The count then proceeds to charge the city of Chicago with permitting Clybourn place to be in bad repair and unsafe condition, with holes in it and street railroad tracks elevated above its surface and im-

properly adjusted, and to be also poorly lighted; and that by reason of the premises, "the plaintiff's intestate, ignorant of the premises, while driving said hose cart of the city of Chicago in and about the performance of his duties as a fireman, in response to an alarm of fire, along said portion of Clybourn place in the night time on said April 18, 1902, was, without fault on his part, while in the exercise of due caution, thrown out from said hose cart upon the ground, and one of the wheels struck his head and killed him. The usual averments as to the loss to the next of kin follow.

The third count describes the same accident in substantially the same way, but introduces in *haec verba* certain alleged ordinances said to refer to the obligations of defendants, the Chicago Union Traction Company, the Chicago West Division Railway Company and the West Chicago Street Railroad Company, in relation to the locality in question, and alleges that as the said place was much traveled by various conveyances "used by divers persons including certain members of the fire department of the city of Chicago, and the said defendant companies had control of the street railroad and switch track in said street, and used them in their business as passenger carriers," it became and was "by virtue of the terms and conditions of the said ordinances aforesaid, *and by reason of the facts aforesaid,*" the duty "of the three defendant companies" during all the time aforesaid to so lay, arrange and adjust said tracks and each of them and the rails and other parts thereof, *and pave and keep in good and safe condition and repair the said part or portion of Clybourn place* that it would be reasonably safe" for such persons traveling it, including the fire department, "to traverse said Clybourn place and said part or portion thereof, cross over and drive upon and along said tracks and each of them, and said part or portion of said Clybourn place aforesaid with reasonable safety to their lives and limbs."

It is alleged that not regarding said duty, the three defendant companies failed to have the tracks arranged and adjusted according to the ordinances pleaded, and allowed the said tracks to remain improperly "laid, arranged, adjusted and elevated above the surface of Clybourn place," and "during all the time aforesaid wrongfully, negligently and improperly failed and refused to pave and keep in good and safe condition and repair" said portion of Clybourn place, and wrongfully "permitted divers large holes and deep depressions to be formed and remain in said portion of Clybourn place so required to be paved and kept in good and safe condition and repair by them as aforesaid."

A similar duty to repair and a similar neglect are also alleged against the city of Chicago, and a neglect, also, to compel the companies "to properly pave and repair," and the accident is charged as the result of said wrongful acts and neglect.

No evidence of the ordinances was offered by the plaintiff. She, however, urges that said ordinances may be considered as surplusage, and that the count charged a common law obligation resting on the defendant companies which they neglected, said neglect causing the accident. She contends that said common law obligation existed, and that the trial court erred in holding the contrary, and in instructing the jury to find a verdict for the defendants on the third count, and also in pursuance of the same error, in giving the following instruction numbered 22 to the jury:

"The court instructs the jury that under the evidence in this case the defendants were not required to repair any holes or depressions in said street, and you cannot find said defendants, or either of them, guilty because of the presence of such holes or depressions."

No cross-errors are assigned by her as appellee in this court, on the giving of either of these instructions, but she contends that such an assignment is not necessary to secure consideration for her position.

The verdict was in her favor, and she claims that if it can only be sustained on the theory that these instructions were erroneous, then the fact that they were so erroneous should be considered in passing on the verdict and judgment. The proposition of appellants that this appeal must be considered as though the third count of the declaration was non-existent, and also upon the assumption that the defendants could not be held liable for the presence of holes in the street, appellee contends would be to allow them to take advantage of their own wrong in inducing the court to act erroneously in their behalf.

To the declaration of plaintiff each of the defendants pleaded the general issue.

At the trial no witnesses were called for the defendants. The case went to the jury on the evidence for the plaintiff, which consisted of the testimony of three persons—Thielsen, Ryan and Gleason—two being eye-witnesses of the accident, and the third, Gleason, a man who, when it happened, was on the engine two or three hundred feet behind the hose cart which the plaintiff's intestate was driving and from which he fell. Gleason did not see the fall, but coming up in a few seconds to the hose cart at the place of the accident saw the intestate lying dead by the street railroad track. Of the other two witnesses one, Thielsen, was a passenger upon a street car which had just switched from Clybourn place to go into the barn. He was standing on the rear platform of the car, or upon the sidewalk, when the accident occurred—it does not clearly appear which. The other witness, Ryan, was an assistant engineer in the Chicago Fire Department, attached to a company of which the plaintiff's intestate was captain, and at the time of the accident was standing on the footboard of the hose cart which the said Captain Case, the intestate, was driving in response to an alarm of fire.

From the testimony of these witnesses it appears

that Captain Case before the accident was sitting on the hose cart and driving a single horse at a slow trot, occasionally, as is customary, sounding a gong to give notice of his approach. It does not appear why the ordinary speed in responding to an alarm of fire was not used, but the testimony that the rate was a slow trot is uncontradicted.

A street car about 300 feet away was running west on the northerly of two tracks on Clybourn place, and the hose cart was following it in the same direction and running on the same track. Near Paulina street on the north side of Clybourn place is a car barn. About twenty feet west of the east end of this barn was a switch from the north or west-bound main track in the street, running to the north and terminating in the barn. The witness Thielsen describes this switch as "a round, curved, grooved switch"—"a plain switch to be moved from one track into another." "It would shift from one into the other." "When the switch was turned so as to direct the car into the barn, the main track would not be closed."

The street car turned north into the barn—the switch having been previously set for it to do so. The switch was not again moved so as to close the main track and open the switch track before the hose cart arrived at the place. Its front wheels struck the switch as it was turned to close the track to the barn, and they slid along a short distance on the switch track casting or swerving the whole cart to the north. For some reason—either purely because of the jerk or swerve given by running into the switch, or of the presence of a hole or depression in the cedar block paving of the street between the rails of the switch track, into which the hose cart dropped—Case seems to have somewhat lost his balance, but he righted himself and turned his horse to the southwest and drove his cart over the switch rails. It dropped, however, into another hole or depression in the pavement,

west of the switch track and either north of the north rail of the main west-bound track or between the rails of that track, or partly within and partly without (north of) the strip of street between the rails. It is not entirely clear from the evidence in which of these positions the second hole or depression lay; but it is claimed by the plaintiff that it was entirely between the rails of the main west-bound track, and this for the purposes of her contentions being the most favorable view, we have in our consideration of this case, assumed that it was the correct one.

This second drop canted or bounced the cart again violently, and Case this time lost his balance entirely and fell from the north side of the wagon. A front wheel ran over his head. He was thereby instantly killed. The horse ran, but was stopped some fifty feet away by Ryan, who leaped from the rear of the wagon and caught him.

It was almost eight o'clock in the evening. The witness Thielsen says it was "pitch dark," and he saw no electric lights around. Ryan says it was just getting dark, while Gleason says it was pretty dark, and that he could not say whether there were any lights at the barn.

It was proven that the pavement had been in bad condition and the holes therein existent for several months.

After the verdict of the jury motions for a new trial were made by each of the defendants and denied by the court. Motions in arrest of judgment were also made and overruled and judgment given on the verdict. In this court assignments of error are made complaining of alleged erroneous rulings upon evidence, of instructions alleged to be erroneous which were given, and of the refusal of proper instructions, including a peremptory one at the close of all the evidence to find the defendants not guilty. It is also alleged that the verdict is against the weight of the evidence.

JOHN A. ROSE and ALBERT M. CROSS, for appellants; W. W. GURLEY, of counsel.

KICKHAM SCANLAN, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

If the position be well taken by the appellee that this court can and should, if necessary, sustain the verdict and judgment in this case upon a legal proposition negatived by the trial judge in his instructions, provided those instructions were erroneous, it is manifest we shall enlarge or narrow the limits of our inquiry by first considering and disposing of that proposition. Assuming, therefore, without passing on the soundness of the position, that the appellee is entitled to the benefit of the said proposition if it be correct, we shall discuss it.

It is thus stated by the appellee in her argument: "By reason of the defendant companies laying and maintaining their tracks in the street in question, it was their common law duty to keep in reasonably safe condition and repair the portion of said street occupied by their tracks."

We will assume also without discussion that if this proposition be true, neither the instruction which took the third count of the declaration from the consideration of the jury, nor the instruction numbered 22, and recited in the statement prefixed to this opinion, should have been given.

The question is, therefore: Is the proposition a correct statement of the law?

Booth on The Law of Street Railways seems to approve it. Section 243 of that work runs as follows: "In the absence of such a duty imposed by statute or ordinance, a company cannot be required to construct a new pavement on any part of the streets or highways occupied by its railway, *but with reference to repairs the rule seems to be different*. The char-

acter and extent of the use to which that portion of the street is subjected render frequent repairs necessary; hence it has been held that where the defective condition of the street is caused by the failure of a company to keep the streets traversed by its tracks in good repair, it must answer for the consequences."

To this section the notes cite as authority, Cline v. Crescent City R. R. Co., 41 La. Annual, 1031, and several other cases, some of which are also cited by the appellee's counsel in his argument herein. Booth also refers to Wood on Railways and Dillon on Municipal Corporations, apparently in support of the rule stated. The references in the text-writers named, however, do not bear out their citation in support of the doctrine of "a common law obligation" on street railroads to repair the street or pavement between their tracks. They merely lay down the proposition that municipal authority can annex to a grant of privileges in streets a valid condition that such streets shall be kept in repair by the grantee, and the equally undeniable rule that a street railroad company would be liable for the result of improper construction of its tracks, even where the right to lay them had been obtained.

Of the cases cited by the appellee and by Mr. Booth, a careful examination discloses few which we think are really in point in sustaining their statement of the law. In many of them, such as Cline v. Crescent City Ry. Co., 41 La. Annual, 1031; Dominguez v. The Orleans Railroad Co., 35 La. Annual, 751; Rockwell v. Third Avenue Railroad Co., 64 Barbour, 438; Central Railway Co. v. State, 82 Maryland, 647, reported in full only in 33 Atlantic Rep. 265; Cook v. Union Railway Co., 125 Mass. 57; Bradwell v. Pittsburgh & W. E. Pass. Ry. Co., 153 Pa. St. 105, the accident involved actually happened through a defect in the tracks or rails themselves, which had been originally improperly constructed or were out of repair, and anything in the opinion which looks towards the doctrine urged by

appellants here was at best but merely incidental and to be construed with reference to the circumstances of the particular case.

In Oakland Ry. Co. v. Fielding, 48 Pa. St. 320, the report on careful examination would seem to indicate that there was a provision by act of the assembly of Pennsylvania relative to the repair of the streets by the Oakland Railway Company, and that the true scope of the action of the Supreme Court of Pennsylvania was merely the upholding of a judgment which negatived the proposition that this obligation furnished no basis for the plaintiff's case.

In Wagner v. Pittsburgh & W. E. Pass. Ry. Co., 158 Pa. St. 419, the accident occurred because of an excavation or hole between the tracks apparently, but the company's liability is put expressly upon the fact that this was made by the company itself in the course of repairs which it was executing.

In other cases, where the language of the court might seem more nearly to apply to the case at bar, such as Wooley v. Grand Street & Newton R. R. Co., 83 N. Y. 121, and Houston City St. Ry. Co. v. Medlenka (Texas), 43 Southwestern Reporter, 1028, it was the rails of the track which, being dangerous from their exposed condition, caused the accident, not holes or depressions which happened to be within the tracks, and the rule approved by the courts rendering the decisions was that if natural causes raised the tracks so high or sunk the pavement so low that these rails or tracks were rendered unreasonable obstacles to travel, it was the duty of the defendant to so rectify the condition as to abate the nuisance, and that it could not escape liability for accidents resulting from the exposed and dangerous condition of the tracks, any more than it could for accidents resulting from original faulty construction.

This is plainly a different doctrine from a common law obligation to repair the pavement of a street between the rails.

In Groves v. Louisville Ry. Co., 109 Ky. 76, there is a very elaborate discussion concerning the duties of a street railway with the relation to the streets on which it runs, and the Court of Appeals of Kentucky uses this language: "The street railway companies should see to it that the streets between the rails and next to them on all sides be kept level with the rails, or so near the level as not to endanger the lives or property of those having a right to cross them or be on them." It also says: "The rails and road (of a street car company) are a permanent structure, and necessarily keep the travel across and near to the rails from being the same it would otherwise be, hence the use by such companies is not at all analogous to the use of the streets by the public generally."

But although this language goes to support the plaintiff's view of this case, it is to be noted that the accident which was under consideration was to a buggy that came into collision with a rail of defendant's tracks, which rail, it was alleged, was "negligently permitted to stand up high above the level of the street, and was in a dangerous, and defective condition, and was a nuisance." The emphasis of the case, therefore, is on the obligation of a street car company to prevent its tracks or rails from becoming, for any cause, a dangerous nuisance, rather than on any common law obligation to repair

The case of McLaughlin v. Philadelphia Traction Co., 175 Pa. St. 565, is even less satisfactory as an authority for the appellee's position about the common law duty of repair. A charge of the trial judge indeed was by the Supreme Court of Pennsylvania said to be without substantial error, which declared that a hole four or five feet in length and one foot in width and one foot in depth alongside of the rails of a street car company, and bringing about an accident, was presumably caused by reason of the rail being in that particular place, but what the evidence was on the subject

does not appear. Another part of the charge approved said that the question of the negligence of the traction company depended upon the circumstances of the particular locality, and not the character of the depression or hole, while the synopsis of the briefs shows that it was claimed by the plaintiff that by the charter of the company, by statute and by the municipal ordinances, as well as "by the common law," it was the duty of the traction company to keep the street in question "at least in the immediate vicinity of its tracks, free from such a serious and dangerous excavation." A particular ordinance is alluded to, and seems to have been involved, and there is nothing in the opinion negativing the hypothesis that this may have been controlling.

Worster v. Forty-second Street, etc., R. R. Co., 50 N. Y. 203, seems more clearly in point in favor of plaintiff's contention that any other of the cases cited by her, for in that case the statement of the facts shows that the accident was the result of a horse stepping into a hole which was apparently between the tracks, and the Court of Appeals, affirming a judgment against the company, declared that "Assuming that the defendants had a lawful right to lay their tracks in the street where the injury occurred, this right carried with it the obligation to lay the tracks in a proper manner and keep them in repair, and if an injury occurs by reason of neglect in either of these respects, the defendants are liable in damages." The opinion is not elaborately reasoned, however, and the nature of the hole does not clearly appear. An act of the New York Assembly seems also to have been invoked by the counsel for the plaintiff in his brief.

On the other hand, the Court of Appeals of New York in a later case is committed to a view of the law contrary to the plaintiff's contention.

In Lowery v. Brooklyn City & Newtown Railroad Company, 76 N. Y. p. 31, the court, while disclaiming

an intention of deciding in that case that the defendant would not be liable for injuries occasioned by the "improper condition at any time of its own track, even though such injuries were contributed to by the bad repair of the streets," or that the defendant would not be liable for the consequences if any portion of its track should become an obstruction solely by reason of the failure of the city to keep the streets in repair, calls the contrary view "questionable."

In Schild v. The Central Park, North & East River Railroad Company, 133 N. Y. 446 (a case not cited in the respective briefs), Schild sued a street railroad company for injuries received by stumbling over its track upon a crosswalk in the city of New York. The evidence of the plaintiff and of the one witness to the occurrence, a bystander, was that the plaintiff's fall was occasioned by his striking against the westerly rail of the track. It appeared that there was a break or depression in the flagstone of the crossing on the inside of the rail, and the defendant claimed that the evidence showed that the plaintiff fell from stumbling into the hole. Judge Gray, speaking for the Court of Appeals, declared a charge of the trial judge in the Supreme Court correct, as fairly leaving the questions of fact to the jury, which told the jury that if the fall was solely attributable to the presence of the hole in the pavement, then the defendant was not responsible. The charge instructed the jury that the defendant was rightly there, and the duty rested primarily on the city to see that its streets were kept safe and secure. It confined the defendant's liability to the condition of its tracks, and told the jury that although the hole might have contributed to produce the results, they must find the condition of the rail to be the active cause of the plaintiff's fall, and that the rail was improperly maintained, to justify them in finding negligence in the defendant. Judge Gray, after approving this charge of the trial judge,

declares that the verdict of the plaintiff must be taken as establishing conclusively for the Court of Appeals that the plaintiff stumbled over the rail, and not because of the hole in the flagging. He then continues: "The question therefore becomes one which relates to the rights of the defendant and to the duty resting upon it with respect to the laying and maintenance of its rails upon the street surface. The evidence for the plaintiff and for the defendant conflicts as to the height of the rail above the surface of the street. It was either one inch and an eighth of an inch, or upwards of two inches. There was evidence of the defendant that the track when laid some ten years previously was level with the street, but the rails certainly were at the time of this occurrence at some height above the street surface, and to some extent constituted an obstruction in the highway.

The defendant was authorized and had the right to put down its rails in and upon the street, and was under no liability by reason of anything in the grant from the Common Council to keep the street pavement between its tracks in repair.

But it was under an obligation which is necessarily implied as to every use of a highway, so to construct and to maintain its tracks as that by the exercise of a reasonable care and supervision with respect to them, no danger might be occasioned to the public in its use of the highway. * * * There was only the question whether in the way or in the condition in which it suffered *its rails* to remain, it was not neglectful of the right of the public to as safe and unobstructed a use of the street as was reasonably possible under the circumstances."

Judge Gray makes clearly in this case the distinction which we have suggested existed, though made less clear in other cases cited, between the liability of a street railway company for accidents which result from the dangerous position of track rails, although

to what position a hole or depression in the street pavement may have contributed, and an accident resulting not from the position of the tracks, but from the hole itself; and the opinion negatives the theory of a common law duty of the street railway company to repair the street between its tracks.

This we think too the more logical and reasonable doctrine. Legislature and municipal authorities may well, and frequently, perhaps generally, do annex some condition concerning street repairs to a grant of privileges, but these are in the way of compensation and are definite and precise in character. It is a question of expediency in each case whether compensation is to be made at least partly in this manner, or to take some other form. When such statutes or ordinances exist contractually they can be the basis of liability, and may be so even when they are the pure exercise of a police power. North Hudson Railway Company v. Hoboken, 41 N. J. Law, 71.

But to hold that a common law duty exists to repair streets or any part thereof, through which a privilege to run has been given, which includes no exclusive control or use of the street even between the tracks, and thus make two corporations, the municipality and the traction company, equally responsible for the care of them, seems to us illogical. The position of the street railroad tracks does from necessity give some advantages to the cars in the right of way under certain circumstances, but the case is very different from that of an ordinary railway controlling entirely its own roadbed.

This is the view which has been heretofore taken by this court, as is shown by the language of Judge Gary in Calumet Electric Co. v. Nolan, 69 Ill. App 104, where the absence of an express obligation, shown by ordinance or otherwise, to keep any part of the street in repair is held to be fatal to a claim that the defendant street railway company was liable for an

injury caused by a wagon dropping into a hole in wood "which does not appear to have been part of the track, but rather of the street;" and still more clearly by the language of the same judge in a previous case, Rockford City Railroad Company v. Mathews, 50 Ill. App. 267, where an ordinance relied on, which required repair, being held not to have been in force, the court say, that as the evidence shows the verdict of the jury may have been on the theory that the appellee stepped into a hole by the side, but outside of the track, the judgment could not be upheld. "It is a familiar law in this state," says the opinion, "that the repairing of streets in a city is the duty of the city. If a corporation accepts a grant from a city of the right to use the street in a special manner, and the grant is burdened with a duty which it neglects and injury results, the corporation would no doubt be responsible for the consequences of neglect of that duty, but for mere non-repair of a street in which it has a special privilege, it is not liable simply because it has such special privilege."

Our conclusion is that there was no error in withdrawing the third count of the declaration from the jury, or in giving the instruction numbered 22.

Counsel for appellee, however, urge that the holes in the street shown by the evidence to have been the cause of the accident, were caused by the defendant corporation and the improper construction or adjustment of its tracks, and that therefore independently of the claimed common law duty and under the second count of the declaration, the liability of the defendant corporation existed.

This would have more force, in our view, if we thought there was any sufficient evidence tending to establish the fact. We do not find it. The evidence pointed out by appellee's counsel as sustaining it, is said to be on pages 102 and 116 and 117 of the record. The only evidence on the first of these pages not

stricken out by the motion of appellee's counsel himself, which could be applied to this proposition, is "that by the switch there was a big hole on either side of the track." On pages 116 and 117 appears the evidence of the witness Thielsen, that from the time he first noticed the holes until the night of the accident they changed in appearance. "They worked all the time deeper, because the wagons rolled off the track right along, and they worked themselves deeper."

We see no evidence here of the faulty construction of the tracks, or that the defendant's tracks at all were the cause of the holes. It is a matter of such common observation that there are holes in wooden block pavements in the streets of Chicago, both near and away from street railroad tracks, that the court can judicially notice it. In this case the claim of the appellee is that the two holes into which the hose cart dropped and bounced were within the tracks of the railway company, and it is evident that they were the result of the wearing or removal of the cedar blocks with which the street was paved. This may have been the result of many different causes. There is no proof that defendants' arrangement or construction of their tracks caused it.

The question in this appeal, therefore, in our opinion, narrows itself, as is claimed by the appellants, to whether the trial judge was right in the theory on which alone he expressly stated that he refused the peremptory instruction as to the second count, and allowed the cause to go to the jury. This was that it was under the said second count a question for the jury whether it was negligence for the company to leave the switch turned into the switch track behind the car which went into the barn immediately before the hose cart came along, and whether, if so, this negligence was the proximate cause of the accident.

The appellants claim that to refuse the peremptory instruction was erroneous, because:

First, there was no evidence tending to show that so turning or leaving the switch was the proximate cause of the accident; second, that if it were, it was not negligence, nor was there any evidence to prove it negligence; and, third, that even if it were negligence and the proximate cause of the accident, proof of it was not admissible under the declaration, which charged entirely different acts of negligence and did not cover the negligent leaving of a turned switch.

Any one of these positions, if sustained, is sufficient to show that the peremptory instruction refused should have been given. We are forced to the conclusion that each one is justified by the record.

We think that the evidence shows conclusively and without contradiction, that the proximate cause of the deceased's fall from the hose cart was not the position of the switch, but the presence in somewhat close proximity to each other of two serious defects in the pavement of the street. After one had been passed, the presence of the other, whether it were without or within the defendant's tracks, led to the loss of balance by the unfortunate driver of the wagon, and his fall beneath its wheels. And we do not see that there was any evidence that the position of the switch caused the drop of the wagon and the bouncing of the driver from his seat at either hole. If, however, the fact that the wheels of the wagon, were deflected some three or four feet along the switch track toward the barn, before it dropped into the first hole, can be deemed in any sense the cause of the wagon afterward being driven into the two holes, and of the consequent accident, then we are confronted by the question: How can the failure to turn back this switch, which left the track into the barn closed and the main track open, be held negligence, more than would have been the closing of the main track and the opening of the barn

track? Since the switch was rightfully in the street and a necessary adjunct of the defendant's road, it was proper for the company to keep it open or shut, as the exigencies of business required, for it was no more dangerous to ordinary travel, so far as the evidence shows, in one position than the other. *Non constat,* but that the switch was left closed for the next car which was due on the track. *Non constat,* but that being turned back, it would, as appellants suggest, have deflected some conveyance driven, as one would have had a right to drive it, from the middle to the north side of the street, and thereby directed it towards one of the defective places in the pavement. That this accident was the fault of the defective pavement, not of the open switch, the whole evidence shows.

But if these objections of the appellants could be disposed of, there would still remain a fatal variance between the proof and the declaration repeatedly pointed out and insisted on at the trial.

The negligence which, under this theory of the trial judge, was held a question for the jury, is not, in our opinion, charged in the declaration and therefore could not be properly made the basis of a recovery in this case, if it existed. The doctrine that the plaintiff could not recover for any other or different negligence than that charged in the declaration is not disputed by her counsel; but it is argued that the second count, which we have very fully abstracted in the statement, prefixed hereto, covers the alleged negligence in leaving the switch turned. We do not so read it. It would be useless to attempt an argument on this point. We need only say that we agree with the contention of appellants in this regard,—"that the whole scheme of the second count relates to the permanent position and condition of the tracks," and, "that the supposed negligence of turning this switch shortly before the accident into a position (and leaving it there)

where it would cause a wagon to veer from the main track onto the switch track, is nowhere alleged in the count, nor is anything alleged which covers such a supposed act.''

For the reasons indicated we think the court below erred in refusing to instruct the jury to find the defendants not guilty, and the judgment must be reversed with a finding of facts by this court.

*Reversed.*