Dietrich M. E. Brun, Appellee, v. Chicago City Railway Company et al.

On Appeal of Chicago City Railway Company, Appellant.

Gen. No. 17,431.

Dietrich M. E. Brun, Appellee, v. Chicago City Railway Company et al.

On Appeal of P. Nacey Company, Appellant.

Gen. No. 17,432.

1. STREET RAILROADS, § 24*—*no common law duty to repair holes between tracks.* A street railway company owes no common law duty to a wagon driver to repair holes in the street between the tracks not due to the operation of the railway itself.

2. STREET RAILROADS, § 15*—*when incorporating statute subjects company to ordinance obligations.* The Act of February 14, 1859, incorporating the Chicago City Railway Company, subjects it to all the obligations imposed on the beneficiaries under Chicago ordinance of 1858, authorizing the construction of certain railways.

3. STREET RAILROADS, § 45*—*when prima facie case of burden to repair is established.* In an action against the Chicago City Railway for failure to repair a hole between its tracks, the company claimed there was no showing that Chicago ordinance of 1858, authorizing construction, was in force after its limitation or that the council had not elected to purchase the railway, that the scene of accident was within limits of Chicago in 1858, or that the railway was built under the ordinance. The Act of 1859 incorporated defendant and it was stipulated that defendant was operating a railway at the site of and at the time of the accident. *Held*, the ordinance, the Act and the stipulation taken together make a *prima facie* case that the burden to repair at the site of the accident rested upon defendant.

4. STREET RAILROADS, § 45*—*when estopped to repudiate ordinance obligations.* An electric street railway company enjoying the privileges of the Chicago ordinance of 1858, authorizing construction and operation, cannot contend that as the ordinance requires cars to be operated with animal power it must be presumed that its operation at the place where there was a hole between its tracks could not be under the ordinance, nor the conditions of the ordinance binding upon it.

---

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.
Vol. CLXXXIII 9

5. Street railroads, § 44*—*duty to repair imposed by ordinance.* The Chicago City Railway Company cannot contend that Chicago ordinance of 1858 imposed no duty in the absence of an order of the council, to repair between its tracks a hole made by a contractor under express municipal authority, as section 7 of the ordinance imposed a present unconditional duty on it, and Municipal Code of 1905, § 1945, is an order concerning repairs· within the ordinance.

6. Negligence, § 128*—*when defective declaration is cured by verdict.* Where a declaration against a contractor for failure to refill a trench in a street properly is construed by the parties on the trial as sufficiently alleging that the hole was made by the defendant, the failure to aver that the hole was so made is cured by the verdict.

7. Negligence, § 187*—*duty to refill trench in street properly.* In an action against a construction company for an injury alleged to have been caused by its failure to fill a trench in a street properly, it cannot contend it was not liable for failure to maintain the street where instructions stated it was not its duty to maintain the street, but the question was whether it had been negligent in refilling in the first instance.

8. Negligence, § 198*—*when contributory negligence in passing over track is for jury.* In an action against a construction company for not filling a trench on a street properly, contributory negligence of a wagon driver in passing over the depression, under conflicting contentions whether it was latent or patent, is a proper question for the jury.

9. Street . railroads, § 45*—*when question whether depression was between tracks is for jury.* Where, in an action against a street railway and a contracting company for injuries sustained by a depression in the street, it is doubtful whether the depression was between the railway tracks, such doubt is a question for the jury to resolve.

10. Street railroads, § 45*—*when instruction taking from jury question of expiration of ordinance is harmless.* In an action against a street railway company, an instruction taking away from the jury, by the use of the present instead of the past tense, the question whether an ordinance requiring repairs had expired is harmless where the ordinance had not expired.

11. Negligence, § 234*—*when erroneous instruction on right to presume safety is cured.* An instruction erroneously stating that plaintiff had a right to presume a street was safe for travel is cured by a statement, made a prerequisite, that plaintiff must have been in the exercise of ordinary care, and is not misleading.

12. Instructions, § 151*—*may be refused when covered by those given.* Inaccuracy in giving an instruction is harmless

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

where the other instructions and the evidence render it improbable that the jury were misled.

13. NEGLIGENCE, § 213*—*when instruction is misleading.* An instruction that a defendant is not liable if a refilled trench in a street was left in a safe condition and subsequently became unsafe, is misleading, where it is material as to how soon a depression appeared and to what extent.

14. INSTRUCTIONS, § 42*—*when improper to state instructions are the only law.* It is proper to instruct that the jury should be governed as to the law of the case entirely by the instructions of the court, but it is improper to state that the jury "should consider that only as law which has been given by the court in the instructions."

15. APPEAL AND ERROR, § 1095*—*when statement in brief of defendant is not binding on codefendant.* Where in an action against a street railway and a contracting company, it is maintained a depression in the street was between the tracks of the railway company, a statement to such effect in the contractor's brief is not binding upon the railway company.

16. APPEAL AND ERROR, § 1793*—*erroneous judgment as to one of two joint defendants is erroneous as to both.* A monetary judgment for a wagon driver against a street railway company and a construction company is a unit as to both defendants, and is erroneous as to both if erroneous as to one.

17. APPEAL AND ERROR, § 1769*—*when remittitur required as condition of affirmance.* Where the trial court has required a remittitur of two thousand five hundred dollars from a verdict of eight thousand five hundred dollars in a personal injury case, if the Appellate Court is of the opinion that the amount is still excessive it may require a reduction to four thousand dollars as a condition for affirmance.

SMITH, J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1911. Affirmed on remittitur; otherwise reversed and remanded. Opinion filed November 3, 1913.

JOHN E. KEHOE and C. LEROY BROWN, for appellant Chicago City Railway Company.

AMOS C. MILLER and J. HOMER SULLIVAN, for appellant P. Nacey Company.

JAMES L. BYNUM and EDWARD MAHER, for appellee; GUERIN, GALLAGHER & BARRETT, of counsel.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

MR. JUSTICE BROWN delivered the opinion of the court.

These appeals of the Chicago City Railway Company and the P. Nacey Company respectively are taken separately from a judgment for six thousand dollars against these two corporations jointly in favor of Dietrich M. E. Brun, the plaintiff and appellee. They were consolidated for hearing on one abstract but separate briefs and arguments filed by the appellants and one brief and argument by appellee.

The judgment was rendered by the Superior Court of Cook county on a verdict of a jury for eight thousand five hundred dollars. Two thousand five hundred dollars was remitted from this verdict by the plaintiff, whereupon the court overruled separate motions made by the appellant for a new trial and separate motions made by them in arrest of judgment, and rendered the judgment appealed from.

The suit in which the verdict and judgment were rendered was for personal injuries sustained by the plaintiff Brun under the following circumstances:

In the middle of the afternoon of October 15, 1906, a bright day, the plaintiff was driving one horse in a large express wagon at a walk or "a little jog of a trot" along Archer avenue in the city of Chicago. When he had reached a point near the intersection of Keeley street and opposite a building in course of erection known as 2836 to 2840 Archer avenue, one or both of the front wheels of the wagon dropped into a depression which stretched from the sidewalk curb in front of said building to the centre of Archer avenue. The depression was from two to three feet wide and at least eight to ten inches deep. There is a difference in the testimony concerning the depth. The jolt threw the plaintiff off his seat on the wagon. He fell on his head on the asphalt pavement with which Archer avenue is paved and was injured.

The depression was the consequence of the follow-

ing acts of the P. Nacey Company and the city of Chicago:

September 7, 1906, the P. Nacey Company obtained from the city of Chicago a permit "To open the street in front of property known as 2836-40 Archer avenue, said work was to be completed 9/17/06. Amount of deposit $30. Opening to be rammed while being filled. This permit is granted and accepted on the express understanding and agreement that in all cases where openings are to be made across any railway tracks proper notice shall be given the railway company or the officers thereof of such opening, and that red signal lights must be displayed at night.

JOHN E. TRAEGER,
Superintendent of Streets.

This department reserves the right to revoke this permit at any time. Paid September 7, 1906."

The weight of the evidence is clearly to the effect that under this permit the P. Nacey Company on or about September 10th dug a trench from the front of the building in question, which was on the north side of Archer avenue, for the purpose of running a sewer from said building to the main sewer in the middle of the street.

On Archer avenue were two railway tracks of the Chicago City Railway Company, one north of the centre of the street, the other south of the centre. The space occupied by the two railway tracks, that is, the space within the rails of each track and about a foot in width on the outside of each track was paved with granite blocks. The remainder of the street was paved with asphalt. The P. Nacey Company in digging the trench cut out the asphalt in pieces two feet or more square and removed the granite blocks and piled them and the material taken from the ditch in the street. The ditch was dug at least six feet deep (perhaps nine) and the sewer laid. Under the asphalt, which was three or four inches thick, there was concrete six or seven inches thick, which was dug up with a pick; under-

neath that was dirt. The same day the P. Nacey Company began to refill the trench, first filling between the portion south of the northerly rail, that is, between the rails and between the tracks. The Company worked its men overtime to finish this portion of the filling and had completed it by eight o'clock in the evening of September 10th. The next day it finished the filling of the rest of the trench. The manner in which the Nacey Company refilled the trench was one of the matters in dispute in the cause. The question was left to the jury under instructions hereinafter mentioned. The superintendent of the Company testified, however, that he does not think the concrete under the asphalt was put back or any fresh concrete made and put under the asphalt blocks. The pieces of asphalt he says were replaced. As to the replacing of the granite blocks between the tracks there was discrepancy in the evidence.

The liability of the Nacey Company was placed by the plaintiff's contentions on the failure to refill the trench properly and so as to make it reasonably safe to travelers on the street.

As left immediately after the filling, the space which had been occupied by the trench was a little (two or three inches) above grade, dirt having been put over the relaid blocks apparently to fill in the interstices. In a day or two the filling began to sink and a month afterward, when the accident occurred, the depression had, according to the variant testimony, reached a depth of from eight to twenty-four inches. The weight of the evidence, however, would seem to be that it was not more than a foot deep.

The liability of the Railway Company is placed by the plaintiff's claim on a basis different from that on which the Nacey Company is said to be chargeable. It is maintained that the Nacey Company is liable because it violated a duty resting on it to fill the trench properly, and that the Railway Company is liable be-

cause it violated a duty resting on it to keep so much of the street as was occupied by it in good repair and condition.  The space occupied by the trench having ceased to be in such good repair and condition on account of its being opened and insufficiently refilled, and having continued in a defective condition for a month or more, it became, it is contended, the duty of the Railway Company to see to it that it was placed again in a reasonably safe condition for travel.

Of course this duty, if it existed, furnished no ground for charging a liability on the Railway Company if the depression or hole into which the wheel or wheels of the plaintiff's wagon dropped was not within that part of the street occupied by the Street Railway Company.  The appellee asserts in argument that "There is no doubt whatever that appellee's wagon wheel did fall into a depression between the tracks of the Railway Company.  All the witnesses say that. The same thing is said in the Nacey Company's brief."

The assertion of the Nacey Company's brief is not binding on the Railway Company, and the rest of the paragraph we have quoted from the appellee's brief is perhaps too strong a statement, in view of the unsatisfactory and confused testimony on this point. The Railway Company on the contrary asserts that "It is somewhat doubtful under the evidence whether the hole into which his wagon wheel fell was inside the track."

But on a careful review of all the testimony given on direct and cross-examination of the witnesses on this point, it is clear that at best only a "doubt" remains.  That doubt, if it existed, was for the jury to resolve.  It inheres in their verdict under the pleadings, evidence and instructions, we think, that they found that the wheel fell into a depression within that part of the street "occupied by the Railway Company" and south of the northerly rail thereof.  We must suppose that they did so, if that supposition is

necessary to sustain the verdict, for the evidence certainly tends most strongly to support that view. There was, however, no common law duty resting on the Railway Company to repair holes in the street between the tracks not due to the operation of the railway itself. *Chicago Union Traction Co. v. Case,* 129 Ill. App. 451. We must look, therefore, to the ordinances and statutes under which the Railway Company was operating its cars at this place to ascertain if such a duty is imposed by them. It is the contention of the plaintiff that it is and various ordinances are pleaded and proved by him to sustain it.

As the judgment is a unit as to the two defendants and is erroneous as to both if erroneous as to one (*Claflin v. Dunne,* 129 Ill. 241), we may properly first discuss this contention, which is vigorously opposed by the Railway Company. It is primarily based on an ordinance of the City Council of Chicago passed August 16, 1858, and amended December 20, 1858. As amended the parts of it which were read in this cause and seem material are as follows: "An ordinance authorizing the construction and operation of certain horse railways in the streets of the City of Chicago.

Be it ordained by the Common Council of the City of Chicago:

Section 1. That there is hereby granted to Henry Fuller, Franklin Parmelee and Liberty Bigelow, and such other persons as may hereafter become associated with them and to their executors, administrators and assigns, permission and authority and consent of the Common Council to lay a single or double track for a railway with all necessary and convenient tracks for turnouts, side tracks and switches in and along the course of certain streets in the City of Chicago hereinafter mentioned, and to operate railway cars and carriages thereon in the manner and for the time and upon the conditions hereinafter prescribed: provided that said tracks shall not be laid within twelve feet of the sidewalks upon any of the streets.

Section 2. That said parties are hereby authorized

to lay a single or double track for a railway in and along the course of the following streets in said City and extending the same as follows: Commencing on State street at the south side of Lake street, thence south to the present city limits.  *  *  *  Also commencing on State street at the junction of the Archer road, thence along the said Archer road to the present limits of the City.  *  *  *

Section 3.   The cars to be used upon said tracks shall be operated with animal power only.  *  *  *

Section 7.   The said parties, their associates and successors shall as respects grading, paving, macadamizing, filling or planking on the streets or parts of streets on which they shall construct their said railways, or any of them, keep so much of the respective streets as shall be occupied by their said railways, or either of them, in good repair and condition during all the time to which the privileges hereby granted to said parties shall extend in accordance with whatever orders or regulations respecting the ordinary repairs thereof may be passed or adopted by the Common Council of the said City; and the said parties shall be liable for all the legal consequential damages which may be sustained by any person by reason of the carelessness or misconduct of any of the agents or servants of the said parties in the course of their employment in the construction or use of the railways aforesaid or either of them.

Section 9.   If the said parties, their associates or successors shall hereafter become incorporated, the rights and privileges granted to them by virtue of this ordinance shall extend to such corporation for the time and upon the conditions herein prescribed, and when such act of incorporation shall have been obtained, such corporation shall have all the rights and privileges hereby granted as the successors of said parties without further action of the Common Council.

Section 10.   The right to operate said railways shall extend to the full time of twenty-five years from the passage hereof and at the expiration of said time the parties operating said railways shall be entitled to en-

joy all of said privileges until the Common Council shall elect by order for that purpose, to purchase said tracks of said railways, cars, carriages, station houses, station grounds, depot grounds, furniture and implements of every kind and description used in the construction and operation of said railways or any of the appurtenances in and about the same, and pay for the same in the manner hereinafter mentioned.''

The connection with the Chicago City Railway Company is made by an Act of the Legislature of February 14, 1859, which it is provided by its own terms shall be deemed a public act and noticed by all courts as such without pleading. This act, after creating Fuller, Parmelee and Bigelow, together with David A. Gage, a body corporate by the name of the Chicago City Railway Company, authorizes the said corporation to construct, maintain and operate a single or double track railway within the then present or future limits of the south or west divisions of the city of Chicago on such streets as the Common Council of Chicago had authorized said corporators, or any of them, to do, upon such terms and conditions and with such rights and privileges as the said Common Council has prescribed, and provides that all of the rights and privileges granted or intended to be granted to Franklin Parmelee, Liberty Bigelow, Henry Fuller and their associates in and by the ordinances of the Common Council and the amendments thereto are in all things affirmed and shall pass to and become vested in the City Railway Company.

We think that this establishes the connection and that the City Railway Company became possessed of all the rights and privileges and subject to all the obligations imposed on the original beneficiaries under the ordinance of 1858.

The Railway Company, however, claims in argument that there is no showing that the ordinance of 1858 was in force after 1883, the twenty-five years provided for by its terms having then expired.

The ordinance declares that the right to operate shall last at least twenty-five years and thereafter until the Common Council shall elect to purchase the railway.

The Railway Company argues that "there is no evidence that the Council had not elected to purchase the railway, if any was ever built" under the ordinance.

There is a stipulation in the record in this case that "on Oct. 15, 1906, and for many years prior thereto, the Chicago City Railway Company, defendant in this suit, was operating a double track street railway on Archer avenue southwest from State street to the city limits, passing Keeley avenue and the site of the accident in this case."

We think that the ordinance must be presumed to be in force and the Chicago City Railway operating under it, in the absence of evidence of purchase by the city or termination by other means. If the grant and its conditions were terminated, it was for the Chicago City Railway Company to show.

But the Railway Company also insists that there is no evidence that the intersection of Archer avenue and Keeley street was within the limits of the city of Chicago in 1858. The stipulation above quoted does not cover the matter, it maintains, because "many years" cannot be construed to mean forty-eight years, the stretch from 1906 back to 1858. We think that in the absence of anything to the contrary in the evidence, the stipulation should be construed as implying that the "city limits" for all the purposes of this case, including the application of the ordinance of 1858, were, on Archer avenue, beyond Keeley street.

The Railway Company say also: "So far as the evidence shows, no railway whatever was built on Archer avenue in 1858, or in any subsequent year, under and by virtue of the ordinance of 1858. There is no proof of the acceptance by any one of the ordinance of 1858 or the construction of anything under it."

But to this we think the plaintiff makes the sufficient answer that the stipulation shows that the Chicago City Railway Company has been operating a railway on Archer avenue, and that the ordinance of 1858 shown is the only one under which it could lay tracks in Archer avenue. If it is operating under any other ordinance, or has surrendered its rights and escaped its obligations under that of 1858, it has the burden of showing it.

The Railway Company contends that because a section of the ordinance of 1858 says that "the cars to be used on said tracks shall be operated with animal power only," it must be presumed that its operation in Archer avenue could not be under that ordinance nor the conditions of that ordinance binding on it. We pass by the question whether this section of the ordinance not read in evidence must nevertheless be considered proved, to say that the complement of this proposition, made by the City of Chicago in *Blair v. City of Chicago,* 201 U. S. 400, namely, that the rights of the Railway Company under this ordinance were lost by its change to animal power, was in that case negatived by the U. S. Supreme Court. We do not think the Railway Company is in a position to repudiate the obligations imposed on it by the ordinance while enjoying the essential privileges of it. Taken together, we think that the ordinance of 1858, the Act of 1859, before described, and the stipulation make a *prima facie* case that whatever burden concerning the portion of Archer avenue occupied by the railway was imposed on the beneficiaries named in the ordinance of 1858, rested at the time of the accident on the Chicago City Railway Company.

A further contention of the Railway Company however is, that even if that burden did rest on it, it did not include the duty of repairing or restoring the street between the tracks under the circumstances of this case. The argument is that the duty defined by

the ordinance of 1858 was only to keep such portion of the street as should be occupied by the railway in good repair and condition *"in accordance with whatever orders or regulations respecting the ordinary repairs thereof might be passed in that behalf by the Common Council of Chicago,"* and that no such "orders" were shown in evidence, but that on the contrary it was shown by the evidence that the street was torn up under the express permission of the city and that the city received a deposit applicable to and sufficient for the restoration of the street to its original condition as security that it should be so restored.

The appellee's argument as to this is twofold: First, that section 7 of the ordinance of 1858 "lays a present, unconditional and continuing duty upon the grantees therein and their successors to keep the space between the tracks in Archer avenue in good repair and condition," and that the words "in accordance with whatever orders or regulations respecting the ordinary repairs thereof may be passed or adopted by the Common Council of the said City" do not subject the duty to a condition precedent changing it from an absolute to a conditional duty, but enlarge the present, continuing, absolute and unconditional duty by reserving to the council the right to make additional and extra orders and regulations from time to time to meet changing conditions; and, secondly, that if the different construction of the Railway Company is correct, a subsequent ordinance in force in 1906, and then designated as section 1945 of the Revised Municipal Code of Chicago of 1905, which code was passed as a whole March 20, 1905, supplies sufficiently the "order or regulation" mentioned in section 7 of the ordinance of 1858.

The position of the Railway Company that this ordinance of 1905 was not properly proved, we think unfounded. It provides that "Every person or corporation operating a street railroad in the City * * *

shall also keep in repair such portions of the streets as they severally have agreed or may agree with said City so to keep in repair.''

A majority of the court think that both contentions of the plaintiff above stated are well founded; that section 7 of the ordinance of 1858 places a present, unconditional duty on the Railway Company; and that section 1945 of the Code of 1905 is ''an order and regulation concerning ordinary repairs adopted by the Common Council.''

Passing now from the objections to the judgment made by the appellants, which relate only to the liability of the Railway Company, to those which are applicable only to the Nacey Company, we are called on first to decide on a criticism of the declaration made in the argument of that Company. It is, we think, sufficient to say of this that the objection to the sufficiency of the declaration seems to us highly technical. The declaration was throughout the trial below construed by all parties as sufficient in the matter indicated, which matter is the obvious necessity of alleging that ''the hole into which the plaintiff fell was a hole which the Nacey Company made.'' The Nacey Company, by an ingenious minuteness of analysis, attempts in its argument to show that this allegation is wanting in the declaration and that its absence could be taken advantage of on motion in arrest of judgment, whatever was the proof. We think the declaration was good at all events after verdict. *Sargent Co. v. Baublis*, 215 Ill. 428.

The Nacey Company next insists that the preponderance of the evidenc shows that that Company used ordinary care in all its actions involved in this cause, and is therefore not liable. The argument of the Nacey Company is that the depression of itself does not prove that the original filling was improperly done; in other words, that the condition was not one where ''*res ipsa loquitur*'' applies; that to refill per-

fectly at once the trench necessarily opened was impossible; that the Company did everything that the permit required, and that the arrangement with the city and deposit of money therewith implied that the city assumed the obligation of any subsequent necessary restoration, and that the evidence shows that the accident occurred nearly a month after the Nacey Company ended its work.

This argument is answered by the plaintiff with the statement that the question left to the jury by the instructions, so far as the Nacey Company was concerned, was not whether the Company *maintained* the street in good condition, but whether it was in the first instance negligent in the manner of its refilling.

The 30th instruction given to the jury was: "The jury is instructed that it was not the duty of the defendant, the P. Nacey Company, to keep the street in a reasonably safe condition, but the burden is on the plaintiff to prove that the P. Nacey Company was negligent in its method of filling in the trench, and that the manner of putting back the earth in the trench was not such as would leave the street in a reasonably safe condition. Unless the plaintiff makes such proof by a preponderance of evidence, your verdict should be for the P. Nacey Company."

The jury therefore had before them the question which the Nacey Company says they should have had, and decided it against the Company. This decision, however, the Company contends was against the clear preponderance of the evidence and should not be allowed to stand.

Examination of the evidence in detail does not convince us of the soundness of this position. There was left by it, we think, a fair question for the jury, and on full consideration we deem it our duty to let its decision stand.

In addition to the objections to the judgment which we have discussed relating to the defendants separately and respectively, there are others vigorously

insisted on by them which are pertinent to the case against them both.

The first is the allegation that either as a matter of law, requiring a peremptory instruction, or as a matter of fact, requiring the setting aside of the rendered verdict, there was proof made of contributory negligence on the part of the plaintiff. The gist of the argument of the appellants on this point is that the depression was conspicuous; that of the appellee that it was not patent but rather latent and concealed from a person situated and engaged as was he.

This question, we think, on consideration of all the evidence, was like that of the negligence of the Nacey Company, one for the jury under proper instructions. Such instructions were given. Nos. 14, 15 and 16 cover the matter fully.

Several of the instructions given at the request of the plaintiff are complained of by the defendants.

The Railway Company says that instruction 35 takes away from the jury, by the use of the present instead of the past tense, the question whether the ordinances had expired. It was not a question for the jury. It was for the court. If the opinion we have heretofore expressed is correct, the ordinance of 1858 had not expired by its terms, as there was no "purchase" shown. In that case, even if the instruction was technically wrong as to the ordinance of 1883, it could do no harm.

Instructions 4, 5, 7, 8 and 9 are all attacked by one or both of the appellants. The objections made to them we do not deem it necessary to discuss. We think no one of them is erroneous.

Against instruction 6 both appellants argue, and the question made by it seems to us serious. It is:

"The Court instructs the jury as a matter of law that if they believe from the evidence that the plaintiff, Dietrich Brun, went upon a public street in the City of Chicago, namely, Archer avenue, near Keeley and traveled over the same *and while so traveling was*

Brun v. Chicago City Ry. Co., 183 Ill. App. 129.

*in the exercise of ordinary care for his own safety,*
then the Court instructs the jury as a matter of law
that the plaintiff had a right as a matter of law to
presume that the said Archer avenue was reasonably
safe for the purpose of ordinary travel.''

The italics of course are ours, used for the purpose
of marking the clause which we think saves the instruc-
tion from technical error.   If the plaintiff's ''ordinary
care for his own safety'' would have given' him
knowledge of the defect, then ''ordinary care for his
own safety'' would absolutely negative the absence of
such knowledge; and it is only in the absence of such
knowledge that he is authorized to presume anything.

If ordinary care would not have shown him the
defect, and he had no knowledge otherwise, then no
right to a ''presumption'' of any kind was necessary
under the law to render the person responsible for the
defect, and, having knowledge of it, liable to him.   To
say, therefore, that he was entitled to presume any-
thing under these conditions is practically meaningless
and harmless.   Were it otherwise the instruction
would have been erroneous.   *Chicago & A. R. Co. v.
Sanders,* 154 Ill. 531; *Chicago City Ry. Co. v. McKeon,*
143 Ill. App. 598.

But if not technically erroneous, the question
whether the instruction is not misleading becomes an
important one and the argument that it might have
been is not without force.   We do not approve or com-
mend it, but taken in connection with the other instruc-
tions and the evidence, we do not think it did, nor
probable that it could have misled the jury.

The refusal of two tendered instructions, those
numbered 43 and 38, is also said by the appellants to
be reversible error.   We do not think so.   Tendered
instruction 43 was to the effect that if the street was
left in a reasonably safe condition by the Nacey Com-
pany and that it subsequently became unsafe, the
Nacey Company was not liable.   This instruction, so

far as it was an accurate statement, was fully covered by the given instructions numbered 29, 30, 31 and 32.

Moreover, as phrased it might have been misleading. It would make a difference how soon subsequently a depression appeared and to what extent. If for the moment the street where the ditch had been filled was safe, but almost immediately began materially to sink, it would at least be relevant evidence tending to show bad filling.

Tendered instruction 38 was bad in form. Had it been confined to the proposition that the jury should be governed *as to the law of the case* entirely by the instructions of the court, it would have been correct. To say, however, that the jury "should consider that only as law which had been given by the Court in the instructions" is to imply that the whole body of the law had been included in the instructions—a manifest absurdity.

We have examined all the rulings on evidence and the objections made to them carefully. These objections and those based on the language used in argument by the plaintiff's counsel do not seem to us well taken or to need discussion here.

But the final ground of attack on the judgment has been the reason for hesitation in affirming it. The verdict was eight thousand five hundred dollars, and it was only on a remittitur of two thousand five hundred dollars that a new trial was denied. The damages as assessed by the jury were undoubtedly excessive, and in our opinion, after a very detailed examination of the testimony, expert and other, which bears on the subject of the damages, we think the judgment is clearly too large even after the remittitur.

If the amount can be said to be justified by some of the expert testimony, we think, nevertheless, that the clear preponderance of all the evidence is to the contrary. We are not willing to say that considering all the evidence we think that passion and prejudice gov-

erned the jury in their decision.    We do not therefore reverse the judgment unconditionally.    But in view of our deliberate judgment as to the weight of the evidence on the subject of the damages, we shall affirm the judgment only on a further remittitur of two thousand dollars and interest on two thousand dollars from the date of the judgment, leaving the judgment at four thousand dollars with interest from its date. If the appellee remits within ten days to that amount, the judgment will be affirmed on both appeals. Otherwise it will be reversed and the cause remanded. *Affirmed if a remittitur to four thousand dollars and interest from the date of the judgment is filed within ten days; otherwise reversed and remanded.*

Mr. JUSTICE SMITH dissents.